FOR IMMEDIATE NEWS RELEASE                          NEWS RELEASE #051

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of October, 2014**, are as follows:

**BY HUGHES, J.**:

2014-C -0292     ASHANTI GREEN, AS TUTRIX OF THE MINORS, DAVE PETERSON III AND
                 DAVID PETERSON v. MICHAEL JOHNSON, STATE FARM INSURANCE AGENCY,
                 ALLSTATE INSURANCE COMPANY, AND AMERICAN SOUTHERN HOME INSURANCE
                 (Parish of E. Baton Rouge)

                 Accordingly, we reverse the appellate court's affirmance of the
                 district court's summary judgment in favor of Allstate Insurance
                 Company, and we remand the matter to the district court for
                 further proceedings.
                 REVERSED AND REMANDED.

                 VICTORY, J., concurs.

SUPREME COURT OF LOUISIANA

NO. 2014-C-0292

**ASHANTI GREEN, AS TUTRIX OF THE MINORS,**
**DAVE PETERSON III AND DAVID PETERSON**

**VERSUS**

**MICHAEL JOHNSON, STATE FARM INSURANCE AGENCY,**
**ALLSTATE INSURANCE COMPANY, AND**
**AMERICAN SOUTHERN HOME INSURANCE**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,**
**FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**HUGHES, J.**

This writ presents the issue of whether a motorcycle accident victim, ostensibly insured under the provisions of the motorcycle co-owner's uninsured/underinsured motorist (UM) automobile insurance policy, was entitled to UM coverage under the policy even though there was no coverage for the accident under the policy's liability provisions. Finding the insurer failed to demonstrate a lack of UM coverage, we conclude the district court erred in granting summary judgment dismissing the UM insurer, and the appellate court erred in affirming the ruling; therefore, we reverse and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

This wrongful death and survival action arose on July 16, 2007 when Dave Peterson, while riding a motorcycle that he co-owned with Benjamin Gibson, was involved in an accident with a sport utility vehicle driven by Michael Johnson. Mr. Peterson died from the injuries he received in the accident.

At the time of his death, Mr. Peterson resided with his girlfriend, Ashanti Green, and their two minor children. Ms. Green filed this suit on June 19, 2008, as

tutrix for the minor children, naming as defendants: Michael Johnson and his insurer, State Farm Mutual Automobile Insurance Company ("State Farm"); Allstate Insurance Company ("Allstate"), as the UM insurer of the plaintiff, who contended that coverage extended to Mr. Peterson under her policy provisions; and American Southern Home Insurance Company ("American Southern"), as the alleged insurer of the motorcycle. By a supplemental petition, Allstate was also named as a party defendant in its capacity as the automobile insurer of Mr. Gibson, on the allegation that UM coverage was provided to Mr. Peterson under that policy.[1]

Subsequent to the dismissal of American Southern and Allstate, as the plaintiff's insurer, Allstate, in its capacity as Mr. Gibson's insurer, filed a motion for summary judgment, in 2009, contending there was no after-acquired auto coverage on the motorcycle in question because it was expressly covered by an American Southern policy; the motion was denied by the district court in February, 2012.

Thereafter, on April 16, 2012, Allstate filed another motion for summary judgment asserting a lack of coverage under the Gibson policy. The plaintiff responded with an exception pleading the objection of res judicata, contending the coverage issue had been previously decided by the court in February, 2012. Allstate argued that Mr. Peterson did not have UM coverage under the policy since the policy definitions for "insured person" and "insured auto," as set forth in the *liability section* of the policy, were not met. The plaintiff contended that the motorcycle met the "insured auto" definition, necessary for coverage as an after-

---

[1] Although the motorcycle co-owned by Gibson and Peterson was not expressly listed as an insured vehicle on the Allstate policy issued to Gibson (which listed as insured vehicles only a GMC sport utility vehicle and a Nissan car owned by Gibson and his wife), the Allstate policy contained an after-acquired vehicle provision that covered any auto acquired by the Gibsons during the policy premium period, provided Allstate insured all other private passenger motor vehicles owned by the policyholder, Allstate was notified within sixty days after acquisition of the vehicle, and any additional premium was paid.

acquired vehicle, as contained in the *UM section* of the policy; thus, the plaintiff asserted that Mr. Peterson had UM coverage under the policy. Following a July 23, 2012 hearing on Allstate's motion for summary judgment and the res judicata exception raised by the plaintiff, the district court overruled the exception and rendered summary judgment dismissing Allstate, finding that Mr. Peterson was required to qualify as an insured under the liability portion of the policy in order to qualify for UM coverage.

The plaintiff appealed the district court decision to the appellate court, which affirmed. See **Green v. Johnson**, 13-0103, 2013WL5177142 (La. App. 1 Cir. 9/13/13) (unpublished). This court granted the plaintiff's subsequent writ application. See **Green v. Johnson**, 14-0292 (La. 4/17/14), 138 So.3d 614. Concluding that the lower courts erroneously interpreted the policy provisions and UM jurisprudence, we reverse.

## LAW AND ANALYSIS

Motion for Summary Judgment

This court applies a de novo standard of review in considering lower court rulings on summary judgment motions. Thus, we use the same criteria that govern the district court's consideration of whether summary judgment is appropriate. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law, pursuant to LSA-C.C.P. art. 966(B). See **Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC**, 12-2504 (La. 10/15/13), 124 So.3d 1065, 1071.

On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or

3

more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. See LSA-C.C.P. art. 966(C)(2). See also **Schultz v. Guoth**, 10-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

In its motion for summary judgment, Allstate asserted that the policy it issued to Benjamin Gibson did not provide UM coverage to Dave Peterson while riding the co-owned motorcycle. Allstate argued that Dave Peterson was required to qualify as an "insured" under the liability portion of the Allstate policy in order for him to be entitled to UM coverage and that the plaintiff could not meet her burden to show that the motorcycle was an "insured auto" as defined by the Gibsons' Allstate policy.

Uninsured Motorist Coverage

As this court recognized in **Sims v. Mulhearn Funeral Home, Inc.**, certain elementary legal principles apply in analyzing an insurance policy. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent; this analysis is begun by reviewing the words of the insurance contract. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and courts must enforce the contract as written. The determination of whether a contract is clear or ambiguous is a question of law. See **Sims v. Mulhearn Funeral Home, Inc.**, 07-0054 (La. 5/22/07), 956 So.2d 583, 589-90.

UM coverage is determined by contractual provisions and by applicable

4

statutes.  Under the UM statute, currently LSA-R.S. 22:1295,[2] the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected.  See **Duncan v. U.S.A.A. Insurance Company**, 06-0363 (La. 11/29/06), 950 So.2d 544, 547.  However, the coverage requirement of LSA-R.S. 22:1295 "is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage."  See LSA-R.S. 22:1295(1)(a)(i).[3]

---

[2] At the time of the accident at issue herein, July 16, 2007, the UM statute was cited as  LSA-R.S. 22:680 (formerly LSA-R.S. 22:1406(D), redesignated as LSA-R.S. 22:680 by 2003 La. Acts, No. 456, § 3); the UM statute was again redesignated as LSA-R.S. 22:1295 by 2008 La. Acts, No. 415, § 1, although no changes were made to the substance of the statute by Act No. 415.  For ease of discussion, we will refer to the UM statute by its current designation of LSA-R.S. 22:1295, as there have been no substantive changes to Paragraph (1)(a)(i), at issue herein, since the date of the 2007 accident.  We note that 2010 La. Acts, No. 703 made a non-substantive change to Paragraph (1)(a)(i), in changing "herein" to read "in this Section."

[3] Paragraph (1)(a)(i) of LSA-R.S. 22:1295 provides:

> The following provisions shall govern the issuance of uninsured motorist coverage in this state:
>
> (1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; *however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section*.  In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section.  Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.  The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss.  This coverage shall be known as "economic-only" uninsured motorist coverage.  Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state. [Emphasis added.]

5

In the instant case, the Gibsons' Allstate automobile insurance policy contractually provided both liability and UM coverage. The liability limits selected by the Gibsons were $100,000/$300,000/$100,000, while the UM limits selected were $50,000/$100,000; thus, the Gibsons "select[ed] lower limits" of UM coverage than the policy provided for liability coverage in accordance with LSA-R.S. 22:1295(1)(a)(i). Under these circumstances, by its own terms the coverage requirements of the UM statute were inapplicable to the Gibson policy.

Notwithstanding, and despite the language of the UM section contained in the Gibson policy, the lower courts relied on jurisprudential language holding that "it is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy" as a basis for finding that there was no UM coverage for the accident at issue under the Gibsons' Allstate policy. See **Green v. Johnson**, 13-0103 at p. 6. However, this quoted language first appeared in **Magnon v. Collins**, 98-2822 (La. 7/7/99), 739 So.2d 191, 196, in a discussion concerned with whether UM coverage was statutorily mandated in a case in which the policy at issue did not contain express contractual UM coverage. Thus, the **Magnon** holding, because it discussed statutorily-mandated UM coverage, is not examined at the outset when the automobile insurance policy at issue contains express contractual UM coverage, absent some contention that the contractual coverage runs afoul of the UM statute.[4] Courts begin their analysis of an insurance contract by examining the words of the insurance contract itself. See **Sims v. Mulhearn Funeral Home, Inc.**, 956 So.2d at 589.

In **Magnon v. Collins**, the plaintiff/tort victim sought UM coverage under his employer's commercial general liability policy ("CGI"), which included

---

[4] In the instant case, no issue has been raised by the parties as to whether the express contractual UM coverage met other requirements for UM coverage set forth in LSA-R.S. 22:1295.

6

limited automobile liability coverage for non-owned and hired vehicles; the CGI policy did not contain either express UM coverage or a rejection of UM coverage. Because the tort victim in **Magnon** was an employee of the policyholder and was using his own vehicle at the time of the accident, and the CGI policy expressly excluded, as insureds, the policyholder's employees while using their own vehicles, no coverage was found under the CGI policy for the plaintiff/tort victim's injuries. The **Magnon** court then examined the requirements of the UM statute to determine whether the tort victim was entitled to statutory UM coverage, in the absence of express contractual coverage. No statutorily-mandated UM coverage was found to be required, as the court reasoned that UM coverage was mandated by statute only for "an 'insured' under auto liability coverage."[5] **Magnon v. Collins**, 739 So.2d at 196.

Ergo, the quoted statement of law, taken from **Magnon**, was intended to convey only that, in order for a tort victim to be entitled to *statutory* UM coverage, which would be an implied amendment to an automobile liability policy not expressly containing such coverage, the tort victim seeking UM coverage must qualify as a liability insured under the policy at issue. Also considering CGI policies, **Succession of Fannaly v. Lafayette Insurance Company**, 01-1355 (La. 1/15/02), 805 So.2d 1134, and **Carrier v. Reliance Insurance Company**, 99-2573 (La. 4/11/00), 759 So.2d 37, ruled in accordance with **Magnon v. Collins**.[6] Significantly, in **Carrier**, this court stated: "Plaintiff obviously would be entitled to recovery against [the defendant/insurer] if he qualified under the 'Who is an

---

[5] At all pertinent times the UM statute has required that UM coverage be provided "in not less than the limits of bodily injury liability" by an automobile liability policy "for the protection of persons insured thereunder" unless "any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage." See LSA-R.S. 22:1295(1)(a)(i).

[6] Both **Succession of Fannaly** and **Carrier** similarly found no UM coverage under an employer's commercial liability policy, providing limited automobile liability coverage for non-owned and hired vehicles and excluding coverage for the use of employee-owned vehicles, when the tort victims were company employees occupying employee-owned vehicles.

Insured' provision of the UM coverage." <u>See</u> **Carrier v. Reliance Insurance Company**, 759 So.2d at 41.

The holding of **Magnon v. Collins**, that "a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy," was also quoted in **Filipski v. Imperial Fire & Casualty Insurance Company**, 09-1013 (La. 12/1/09), 25 So.3d 742, and **Cadwallader v. Allstate Insurance Company**, 02-1637 (La. 6/27/03), 848 So.2d 577; albeit, after a determination that no contractual UM coverage was provided in those cases.

In **Filipski**, the plaintiff/tort victim was the subject of an "Exclusion of Named Driver Endorsement" to the automobile insurance policy at issue, which resulted in a contractual agreement between the policyholder and his insurer that there would be no coverage under the policy while the insured vehicle was being driven by the plaintiff, as authorized by LSA-R.S. 32:900(L); therefore, no UM coverage was found to be available under the policy for the plaintiff.

In **Cadwallader**, the plaintiffs sought UM coverage for the policyholder's resident foster children, who had sustained injuries while riding in a non-owned vehicle. The policy at issue in that case provided UM coverage only for the policyholder or her "resident relatives," when occupying an uninsured auto. The foster children, who were in the custody of the Department of Social Services, which contracted with the foster parent to provide care for the children, were not found to be "relatives" of the policyholder and, therefore, they were not entitled to UM coverage under her automobile liability policy. <u>See</u> **Cadwallader v. Allstate Insurance Company**, 848 So.2d at 582-83.

In so holding, this court recognized that the UM statute only mandates that an automobile liability policy provide UM coverage for its named insureds. <u>See</u> **Cadwallader v. Allstate Insurance Company**, 848 So.2d at 583-84. Moreover, **Cadwallader** went on to point out that, in the absence of a conflict with statutes or

8

with public policy, insurers have the same rights as do individuals to limit their liability and to enforce whatever conditions they impose upon their obligations, stating, "It is the particular insurance policy of the insured that establishes the limits of liability and it is well established that this contract of insurance is the law between the parties." **Id.** at 583. When the contract of insurance is clear and unambiguous, the policy must be enforced as written. **Id.** Thus, we conclude that, even when an insurer is not required by law to provide UM coverage, it is nevertheless free to contract to do so.

When the existence of UM coverage under a policy of automobile insurance is at issue, **Magnon v. Collins**, **Succession of Fannaly v. Lafayette Insurance Company**, **Filipski v. Imperial Fire & Casualty Insurance Company**, and **Cadwallader v. Allstate Insurance Company** demonstrate a two-step analysis: (1) the automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy; (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated. See also **Bernard v. Ellis**, 11-2377 (La. 7/2/12), 111 So.3d 995, 1000 (recognizing that an automobile insurance policy must first be examined for contractual UM coverage, and if contractual coverage is absent, "if a plaintiff is insured under the auto liability coverage, he is entitled to UM coverage" (citing **Magnon v. Collins** and **Filipski v. Imperial Fire & Casualty Insurance Company**)).

As required by the first step in this two-step analysis, we turn now to an examination of the UM coverage expressly provided in the Gibsons' Allstate policy to determine whether contractual UM coverage existed for the accident at issue in this case.

In support of her claim of UM coverage for Mr. Peterson's accident, the plaintiff in this case relies on "Part V" of the Gibsons' Allstate policy, entitled

9

"Uninsured Motorists Insurance," which provided, in pertinent part, as follows:

> **We** will pay those damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of:
> (1)  **bodily injury** sustained by an insured person, and
>
> (2)  property damage to **your** insured auto . . . .
>
> **Bodily injury** or property damage must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto. **We** will not pay any punitive or exemplary damages.
>
> * * *
>
> **Insured Persons**
> (1)  **You** and any **resident** relative.
>
> (2)  Any person while in, on, getting into or out of an insured auto with **your** express or implied permission.
>
> Any other person who is legally entitled to recover because of **bodily injury** to **you**, a **resident** relative, or an occupant of **your** insured auto with **your** express or implied permission.
>
> **An insured auto is a motor vehicle:**
> (1)  described on the Policy Declarations.  This includes the **motor vehicle you** replace it with.
>
> (2)  **you** become the owner of during the premium period.  This additional **motor vehicle** will be covered if **we** insure all other private passenger **motor vehicles you** own.  **You** must, however, tell **us** within 60 days after **you** acquire the **motor vehicle**.  **You** must pay any additional premium.
>
> * * *
>
> **Definitions**
> * * *
>
> (3)  **Motor Vehicle** - means a land motor vehicle or trailer other than:
>   a)  a vehicle or other equipment designed for use off public roads, while not on public roads,
>   b)  a vehicle operated on rails or crawler-treads, or
>   c)  a vehicle when used as a residence or premises.
>     * * *
> (5)  **You** or **Your** - means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

Under these express contractual UM provisions, Dave Peterson would meet the definition of an "insured person" since he was a "person while in, on, getting into or out of an 'insured auto' with [the policyholder's] express or implied

permission." Further, the co-owned motorcycle would qualify as an "insured auto" for purposes of UM coverage since it was a "land motor vehicle."

In support of its claim that there was no UM coverage for the instant accident, Allstate points to the limited definition of "auto" in "Part I" of the Gibsons' Allstate policy, entitled "Automobile Liability Insurance," which provided, in pertinent part, as follows:

> **We** will pay those damages which an insured person is legally obligated to pay because of:
> (1)  **bodily injury**, sustained by any person, and
>
> (2)  damage to, or destruction of, property.
>
> Under these coverages, **your** policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured **auto**.
>
> * * *
> **Insured Persons**
> (1)  While using **your** insured **auto**:
>   a)  **you**,
>   b)  any **resident**, and
>   c)  any other person using it with **your** express or implied permission.
> * * *
> **Insured Autos**
> (1)  Any **auto** described on the Policy Declarations.  This includes the four wheel private passenger **auto** or **utility auto you** replace it with.
>
> (2)  An additional four wheel private passenger **auto** or **utility auto you** become the owner of during the premium period.  This **auto** will be covered if **we** insure all other private passenger **autos** or **utility autos you** own.  **You** must, however, tell **us** within 60 days of acquiring the **auto**.  **You** must pay any additional premium.
> * * *
> **Definitions**
> * * *
> (2)  **Auto** - means a land motor vehicle designed for use on public roads.
> * * *
> (6)  **You** or **Your** - means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

The primary distinction between the UM provisions and the liability provisions vis-à-vis coverage for the instant accident is that the UM provisions

11

included within the definition of "insured auto," for coverage as an after-acquired vehicle, a "land motor vehicle," which would encompass a motorcycle,[7] while the liability provisions included within the definition of "insured auto," for coverage as an after-acquired vehicle, only a "four wheel" auto, which would exclude liability coverage for a motorcycle. We conclude the former policy provisions are applicable herein, rather than the latter.

An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. **Sims v. Mulhearn Funeral Home, Inc.**, 956 So.2d at 589.

When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. **Id.**

We find no ambiguity in the Gibson policy; the parties clearly intended to extend greater UM coverage to after-acquired vehicles, by defining an "insured auto" to encompass any "land motor vehicle" (with only three listed exceptions),

---

[7] See **Posey v. Commercial Union Insurance Company**, 332 So.2d 909, 912 (La. App. 2 Cir. 1976) ("A motorcycle is clearly a land motor vehicle.").

12

than for liability coverage, which was limited to "four wheel" autos. The inclusion in the policy of differing definitions for "insured auto" in differing coverage sections produced no absurd consequences, and the policy must be applied as written. See LSA-C.C. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); **Sims v. Mulhearn Funeral Home, Inc.**, 956 So.2d at 589.

Considering that the co-owned motorcycle fell within the definition set forth in the Gibson policy's UM coverage provisions, as a "land motor vehicle," and the motorcycle was acquired by the Allstate policyholder (Gibson) within the requisite sixty-day time period,[8] the motorcycle could be considered an insured motor vehicle for purposes of UM coverage. Further, it was uncontested that Dave Peterson was operating the motorcycle with the permission of Mr. Gibson. Therefore, under the contractual UM provisions, Mr. Peterson's accident could not be excluded from UM coverage under the Gibson policy, on the basis alleged in Allstate's 2012 motion for summary judgment. Because there was express contractual UM coverage in the Gibson policy, it was unnecessary for the lower courts to apply the UM statute to determine whether UM coverage was statutorily mandated, thus the second prong of the two-part inquiry demonstrated in the **Magnon v. Collins** line of cases should not have been reached in this case.

In this case, Allstate, as the mover, was required to show that it was entitled to summary judgment as a matter of law, as set forth in LSA-C.C.P. art. 966(B)(2). Allstate failed to show that UM coverage was excluded under its policy provisions; therefore, summary judgment was inappropriate.

---

[8] The motorcycle was purchased on June 30, 2007, within the Gibson policy premium period of February 26, 2007 through August 26, 2007, and the accident occurred on July 16, 2007, sixteen days later.

Issue First Raised at Oral Argument

During oral argument before this court, counsel for Allstate argued, in addition to the contentions it presented in brief to this court, that coverage to Mr. Peterson was excluded under its policy provisions because the motorcycle he was riding at the time of the accident was covered under an American Southern policy, and the Allstate policy allegedly excluded coverage in such a circumstance.

We note that this particular issue was not presented in briefs filed with this court, nor does the appellate court opinion indicate that the issue was raised in that court. Further, counsel for Allstate indicated during oral argument to this court that, as he was not Allstate's counsel in the district court, he was unsure whether the matter was raised in the district court. However, a review of the record reveals that Allstate's 2009 motion for summary judgment was, in fact, based on this exact argument,[9] and the 2009 motion for summary judgment was denied by the district court in February, 2012.[10] Allstate did not seek appellate review of the denial of that motion for summary judgment.

Thereafter, in its subsequent April 2012 motion for summary, Allstate again contended that there was no UM coverage under its policy, arguing that Mr. Peterson did not qualify as an insured under the liability portion of the policy, and,

---

[9] Although the appellate record, which was designated by the plaintiff/appellant in accordance with LSA-C.C.P. art. 2128 for purposes of appeal, does not contain the 2009 motion for summary judgment filed by Allstate, Allstate points out, in a memorandum in support of its 2012 motion for summary judgment that is contained in the appellate record, the argument it previously made in its 2009 motion for summary judgment: "Allstate as UM insure[r] for Benjamin Gibson first filed a Motion for Summary Judgment arguing that the 60 day after-acquired language in the UM policy does not apply to the motorcycle because Benjamin Gibson and Dave Peterson chose liability and UM insurance with American Southern Home Insurance Company, not Allstate."

[10] The district court's reasons for denying Allstate's 2009 motion for summary judgment were set forth in the court's February 13, 2012 minute entry, which stated:

> Allstate has exposure under the UM policy. Even though Benjamin Gibson may not have desired to insure the motorcycle, it appears **there may have been coverage under the 60-day acquisition rule**. The Court believes there are genuine issues of material fact in dispute that would prevent the granting of the motion for summary judgment; therefore, the Court denies the motion for summary judgment. [Emphasis added.]

14

in answer to the plaintiff's plea of res judicata (based on the February 2012 denial of Allstate's motion for summary judgment) to the motion, Allstate specifically stated that it was urging "*a different issue of law*." (Underscoring and emphasis original.) In its memorandum in opposition to the plaintiff's plea of res judicata, Allstate further expressly stated that its 2012 motion for summary judgment "raises a completely new issue of law in this case." Thus, the appellate record does not reflect that the argument previously presented in the 2009 motion for summary judgment (i.e., that the American Southern coverage precluded coverage under the Allstate policy) was re-asserted in the 2012 motion for summary judgment or that Allstate's 2009 argument served as a basis for the district court's decision on the 2012 motion for summary judgment.[11]

In the plaintiff's appeal to the court of appeal and subsequent writ of review before this court, the plaintiff has exclusively sought review of only the 2012 summary judgment in Allstate's favor. The appellate record, as designated by the

---

[11] The district court gave written reasons for granting Allstate's 2012 motion for summary judgment on August 9, 2012, stating in pertinent part as follows:

> The facts are that Mr. Gibson co-owned a motorcycle with Dave Peterson. Mr. Peterson was killed in an accident involving the motorcycle and a third party. The insurance on the motorcycle was provided by a separate insurer that listed Mr. Peterson and his girlfriend as permissive driver and insured respectively. Plaintiff has sued Allstate as the liability and underinsured motorist carrier for Ben Gibson, who simply signed as co-owner to allow Mr. Peterson to obtain financing.
>
> Allstate previously filed a motion for summary judgment claiming that the Gibson liability policy did not afford coverage to Peterson. That motion was denied because ... under the Allstate liability policy, Mr. Gibson had a 60 day grace period to add newly acquired vehicles and the accident occurred prior to the running of the 60 days.
>
> Allstate now argues that there is no coverage under the Gibson UM policy. The court agrees with the defendant that the Allstate UM policy does not provide coverage because Peterson does not qualify as an insured under the liability portion of the policy. It is undisputed that Mr. Peterson was not a named insured under the Gibson liability policy and that he was not a resident of the Gibson household. Therefore, the court agrees that the only way for Mr. Peterson to qualify for UM coverage is if the liability policy also afforded coverage to him and the motorcycle.
>
> In review of the liability policy, the motorcycle is clearly not covered and in order to be covered under the UM policy one must also be covered under the liability policy. Mr. Peterson was not an insured and the after acquired provisions of the liability policy does not include motorcycles.

15

plaintiff, did not contain the 2009 motion for summary judgment, nor any supporting documents submitted in connection therewith. Notably absent from the appellate record is a copy of the American Southern insurance policy, which formed the basis for Allstate's policy defense raised in its 2009 motion for summary judgment. Furthermore, at the time that the plaintiff designated the appellate record in the district court, Allstate filed a motion to supplement the appellate record with certain other items appearing in the district court record; however, the 2009 motion for summary judgment, memorandum, and attachments were not among the items sought to be supplemented into the appellate record.

Since appellate review of motions for summary judgment is de novo, an appellate court considers the pleadings, depositions, answers to interrogatories, admissions *on file*, and any affidavits submitted by the parties. **Cichirillo v. Avondale Industries, Inc.**, 04-2894 (La. 11/29/05), 917 So.2d 424, 428 n.7 (citing **Schroeder v. Board of Supervisors of Louisiana State University**, 591 So.2d 342, 345 (La. 1992)). The failure of Allstate to ensure that the appellate record contains the basis for its 2009 policy defense (i.e. that UM coverage was excluded under its policy because the co-owned motorcycle was expressly insured by American Southern), re-urged by Allstate at oral argument before this court, precludes review of the issue.[12]

### CONCLUSION

As we state herein, a two-step analysis is employed in evaluating whether an automobile insurance policy provides UM coverage: (1) the policy is first examined to determine whether UM coverage is provided under the express

---

[12] Generally, a party who is satisfied with a judgment and does not file an appeal or a petition for review is entitled to make any argument, supported by the record, in support of the judgment in his favor. See **City of Baton Rouge/Parish of East Baton Rouge v. Myers**, 13-2011 (La. 5/7/14), 145 So.3d 320, 330 n.5; **Mosing v. Domas**, 02-0012 (La. 10/15/02), 830 So.2d 967, 976; **Matthews v. Consolidated Companies, Inc.**, 95-1925 (La. 12/8/95), 664 So.2d 1191, 1191-92 (per curiam); **Roger v. Estate of Moulton**, 513 So.2d 1126, 1136 (La. 1987) (on rehearing). However, "[m]atters dehors the record cannot be considered on appeal." **Wilson v. Wilson**, 219 La. 205, 207-08, 52 So.2d 716, 717 (La. 1951)

provisions of the policy; (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated. Since the Allstate policy at issue in this case contractually included UM coverage, these express provisions governed whether UM coverage existed for the accident at issue, and statutory UM coverage was not at issue. The lower courts erred in first evaluating the policy for statutorily-mandated UM coverage and holding that there could be no UM coverage absent liability coverage, in disregard of the express contractual coverage provided under the UM portion of the policy. Allstate failed to show on motion for summary judgment that the plaintiff would be unable to establish UM coverage under its policy provisions for the accident at issue. Further, arguments raised at oral argument, not previously briefed and unsupported by the appellate record will not be considered by this court.

## DECREE

Accordingly, we reverse the appellate court's affirmance of the district court's summary judgment in favor of Allstate Insurance Company, and we remand the matter to the district court for further proceedings.

**REVERSED AND REMANDED.**

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-0292

### *ASHANTI GREEN, AS TUTRIX OF THE MINORS, DAVE PETERSON III AND DAVID PETERSON*

### *VERSUS*

### *MICHAEL JOHNSON, STATE FARM INSURANCE AGENCY, ALLSTATE INSURANCE COMPANY, AND AMERICAN SOUTHERN HOME INSURANCE*

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**VICTORY, J., concurs.**