MARC E. JOHNSON, Judge.
| «This case involves the interpretation of an insurance contract to determine the policy limits ' for uninsured/underinsured motorist coverage. Encompass Indemnity Company (“Encompass”) appeals the trial court’s granting of Travelers Indemnity Company’s (“Travelers”) motion for partial summary judgment that declared Encompass’ policy provided $500,000 in uninsured/underinsured motorist coverage for the accident at.issue.. For the following reasons, we affirm. ..

FACTS & PROCEDURAL HISTORY

On October 17, 2012, Plaintiff, Jeremy Elliot, who was in the course and scope of his employment with JJA Properties d/b/a Mercedes-Benz of Baton Rouge, was driving a vehicle owned by John Ging Wong when he was rear-ended by a vehicle driven by Andre Holmes. In May 2013, Plaintiff filed suit against Mr. Holmes and his insurer,. State .Farm Mutual Automobile Insurance Company, for damages resulting from the accident.[1] Plaintiff subsequently settled his claims with | ¿State Farm and dismissed State Farm from the suit with prejudice, reserving his rights against all other defendants.[2]
Thereafter, in March 2014, Plaintiff filed a separate lawsuit.against Encompass Indemnity Company, as insurer .of Mr. Wong’s vehicle, and Travelers Indemnity Company, as his 'employer’s insurer, seeking uninsured/underinsured motorist *834 (“UM”) coverage for the accident This lawsuit was transferred and consolidated with the original suit against Andre Holmes.
On December 2, 2014, Travelers fíled a motion for partial summary judgment seeking a declaration that Encompass provided UM coverage to Plaintiff for the sued upon accident with limits of $500,000. The next day, Encompass filed its own-motion for summary judgment seeking a declaration that its UM coverage for Plaintiffs accident was limited to $15,000.
In both motions, Encompass and Travelers agreed that Plaintiff was in the course and scope of his employment with JJA Properties as a service technician at the time of the accident, and that Plaintiff was driving Mr. Wong’s vehicle with his permission for the purpose of transporting it to the dealership to have it serviced. Encompass agreed that it provided automobile insurance to Mr. Wong that covered the vehicle driven by Plaintiff, and that Plaintiff was a covered person under the terms of the policy. However, the parties disagreed as to the amount of UM coverage provided under Encompass’ policy— Travelers asserted the policy provided $500,000 in coverage, while Encompass maintained its policy only provided $15,000 in coverage for Plaintiffs accident.
Encompass based its argument on an exclusion in the policy that excluded coverage, except for the minimum $15,000 liability coverage required by law, for persons engaged in repairing or servicing a motor vehicle. It argued that because ^Plaintiff was engaged in servicing Mr. Wong’s vehicle at the time of the accident, the exclusion applied and Plaintiff was only covered for $15,000 under the policy. Travelers maintained that the UM limit under the Encompass policy was $500,000, and that the exclusion Encompass relied upon only applied to liability insurance and was inapplicable to UM coverage.
After a hearing, the trial court rendered judgment in favor of Travelers, granting its motion for partial summary judgment and finding Encompass provided primary UM coverage in the full amount of its policy limits, or $500,000. The trial court also denied Encompass’ motion for summary judgment seeking to limit its UM coverage to $15,000. The judgment was designated as a partial final judgment for purposes of an immediate appeal under La. C.C.P. art. 1915. It is from this judgment that Encompass appeals.[3]

ISSUE

The issue on appeal is the amount of UM coverage provided by Encompass’ in *835 surance policy for Plaintiffs accident.[4] The specific question is whether Encompass’ policy provided UM coverage to Plaintiff on a broader basis than the liability coverage provided to him.

LAW & ANALYSIS

Appellate courts review the granting or denying of a summary judgment de novo, using the same criteria applied by the trial courts to determine whether | ^summary judgment is appropriate. Davis v. Scottsdale Ins. Co., 13-255 (La.App. 5 Cir. 10/80/13); 128 So.3d 471, 475, writ denied, 13-2818 (La.2/14/14); 132 So.3d 967. Summary judgment is appropriate where there are no genuine issues of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). The interpretation of an insurance policy is usually a legal question that can be properly resolved on a motion for summary judgment. Bonin v. Westport Ins. Corp., 05-886 (La.5/17/06); 930 So.2d 906, 910.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Bonin, 930 So.2d at 910. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. La. C.C. art.2045; Louisiana Ins. Guar. Ass’n. v. Interstate Fire & Casualty Co., 93-911 (La.1/14/94); 630 So,2d 759, 763. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. Id.
Unless the words of the policy have acquired a technical meaning, the words used in the policy will be construed using their plain, ordinary and generally prevailing meaning. La. C.C. art.2047; Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03); 848 So.2d 577, 580. When the words of an insurance contract are clear and explicit and lead to "no absurd consequences, courts must enforce the contract as written. La. C.C. art.2046; Green v. Johnson, 14-292 (La.10/15/14); 149 So.3d 766, 776. “An insurance contract should not, be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its.provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.” Cadwallader, supra at 580. The Louisiana Supreme Court has cautioned that: ..
|7[c]ourts lack authority to alter the terms of an insurance contract under the guise of contract interpretation when the policy’s provisions are couched in unambiguous terms. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with" sufficient clarity the parties’ intent.
Green, supra at 776. The question of whether a contract is clear or ambiguous is a question of law. Cadwallader, supra.
If an endorsement is attached to an insurance policy, and the policy and endorsement are parts of, the same contract, the endorsement becomes part of the contract, and the two must be.construed together. Gauge v. Hamed, 12-510 (La. App. 5 Cir. 5/30/13); 118 So.3d 36, 41, writ denied, 13-2050 (La.11/15/13); 126 So.3d 472. ’ If there is a conflict between the endorsement and the policy, the endorsement must prevail. Id.
*836 An insurance, company may limit coverage in any manner, as long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180, 1183, A provision which seeks to- narrow the insurer’s obligation is strictly construed against the insurer. Id. '
In the present case, as demonstrated by the. coverage summary documents, the Encompass policy at issue provided motor vehicle liability coverage for bodily injury of $500,000 per person with a $500,000 per accident limit. The same policy also provided uninsured motorist coverage of $500,000 per person with a $500,000 per accident limit. ‘
With respect to liability coverage, the policy defines covered persons in pertinent part as:
(1) You or any family member for the ownership, maintenance or use of any covered motor vehicle.
k(2) Any other person occupying or using any covered motor vehicle with permission from you or a family member.
(Emphasis in original). Encompass does not dispute that Plaintiff was a covered person under the policy because he was operating the covered vehicle with permission from the owner.
The policy also contains the following exclusion from liability'coverage:
LOSSES WE DO NOT COVER
We do not provide Personal Liability— Motor Vehicle Coverage for:
6. Any covered person while employed or otherwise engaged in the business or occupation of:
a. Selling;
b. Repairing;
c. Servicing;
d. Storing; or
e. Parking.
Motor vehicles designed for use mainly on public highways. This exclusion only applies to the extent that the limits of liability for this coverage exceed the limits of liability required by the Louisiana Motor Vehicle Safety Responsibility law. This includes road testing and delivery.
(Emphasis in original.)
The parties agree that Plaintiff was driving the covered vehicle' in the course and scope of his employment as a service technician with Mercedes-Benz of Baton Rouge at the time of the accident; Therefore, under this exclusion, the Encompass policy only provided Plaintiff liability coverage in the amount of $15,000 per person with a limit of $30,000 per accident pursuant to La. R.S; 32:900.
The policy provided UM coverage through an endorsement. In the UM coverage endorsement, a “covered person” is defined as:
a. You or any family member.
Lb. Any. other person occupying your covered motor vehicle.
(Emphasis in original.) Again, Encompass does not dispute Plaintiff is a “covered person” for purposes of UM coverage.
The UM coverage endorsement also contains an exclusion section for losses not covered; however, unlike the liability coverage section, there is no exclusionary provision for a covered person while employed or engaged in the business or occupation of selling, repairing, servicing, storing or parking a motor vehicle.[5] Despite the lack *837 of this exclusionary provision in the -UM coverage section of the policy, Encompass maintains that the amount of UM coverage to Plaintiff is limited to the, amount of liability coverage, which is $16,000. Encompass reasons that because Plaintiff is excluded from liability coverage except to the minimum amount required by law, he is necessarily excluded from UM coverage with the same limitations. ■
In support of its. position, Encompass relies on Filipski v. Imperial Fire & Gas. Ins. Co., 09-1013 (La.12/1/09); 25 So.3d 742. We find Encompass’ reliance on Filipski to be misplaced. In Filipski the driver of a pickup truck was struck by an uninsured drunk driver and sued his UM carrier, Imperial Fire & Casualty Insurance Company (“Imperial”). ' Imperial filed a motion for summary judgment on the basis the plaintiff was an excluded driver under the policy. The Louisiana Supreme Court reiterated its prior holdings that a person who is not an insured for |iflpurposes of liability coverage is , not entitled to UM coverage under the same policy. The supreme court explained that a plaintiff must be an insured under auto liability coverage in order to be entitled to UM coverage. Id. at 745. In. Filipski the plaintiff was not an insured for purposes of liability coverage as a result of the named driver exclusion and, therefore, could not be an insured for UM purposes.
In the present case, Plaintiff is indisputably an insured driver for liability purposes. Thus, he is considered an insured for UM purposes. The fact Plaintiff is an insured under the policy has never been an issue in this case. Thus, we find Filipski is-clearly distinguishable from the instant case.,
The issue before us is whether Encompass’ policy offers greater UM coverage to Plaintiff than liability coverage. We find that it does, by the-clear and unambiguous language of the insurance contract.
In Green v. Johnson, 14-292 (La.10/15/14); 149 So.3d 766, the Louisiana Supreme Court was faced with an analogous issue. In Green, a driver of a motorcycle, who co-owned the motorcycle with a third party, was involved in a fatal accident with a sports utility vehicle. The motorcycle driver’s'children brought suit against various defendants, including the third party’s automobile insurer, Allstate, alleging UM coverage was provided to the motorcycle driver. Allstate filed a motion for - summary judgment asserting there was no UM coverage because the motorcycle driver did not meet the definition of an insured person' and the motorcycle did not meet the definition of an insured auto under the liability section of the policy.
In Green, the supreme court explained its prior statements of law that a tort victim must be an insured under the liability' section of a policy before he can qualify as an insured for UM coverage. The supreme court clarified that this statement of law applies only where there is no contractual . UM- -coverage in the hiinsurance policy and, the tort, victim is *838 seeking statutory UM coverage. The supreme court also discussed this statement of law in the context of Filipski, supra: The court noted that in Filipski the tort victim was the subject of an exclusion of named driver endorsement included in the policy and, thus, there was a contractual agreement between the policyholder and his insurer that the tort victim would not be afforded any coverage — liability or UM. Green, supra at 773. The supreme court emphasized that the first step in determining the existence of UM coverage is to examine the automobile insurance policy for contractual UM coverage. Only if there is no contractual coverage under the policy provisions does the court turn to the UM statute to determine if statutory coverage is mandated. Green, supra at 774.
Turning to the facts of Green, the supreme court determined that the motorcycle driver was an insured person under the UM section of the Allstate policy. It further found the motorcycle was an' insured vehicle under the UM section of the’policy, although it was not an insured vehicle under the liability section. Specifically, the liability section defined insured autos as any “four wheel private passenger auto or utility auto,” which would exclude liability coverage for a motorcycle, while the UM section defined insured autos as “a land motor vehicle,” which would encompass a motorcycle, Id. at 775. .
The supreme court concluded that “the parties clearly intended to extend greater UM coverage to after-acquired vehicles, by defining an ‘insured auto’ to encompass any ‘land motor vehicle’ (with only three listed exceptions), than for liability coverage,, which was limited to ‘four wheel’ autos.” Green, 149 So.3d at 776. Significantly, the supreme court stated that “[t]he inclusion in the policy of differing definitions for ‘insured auto’ in differing coverage sections produced no absurd consequences, and the policy must be applied as written.” Id. As such, the | ^.supreme court found Allstate was not entitled to summary judgment as it failed to show UM coverage was excluded under its policy provisions.
We find Green to be guiding. UM coverage was contractually provided, to Plaintiff under the automobile insurance policy as Plaintiff was occupying a covered motor vehicle. While the UM coverage endorsement contained some exclusions, none applied to Plaintiff. Conversely, under the liability section of the policy, Plaintiff, as being engaged in the servicing or repairing of a covered vehicle, was specifically excluded from coverage, beyond the minimum required by law, or ,$15,000.
We find no ambiguity in the policy. The clear words of the contract show that greater UM coverage was extended to Plaintiff, as a person engaged in servicing or repairing an insured auto, than liability coverage. Differing exclusions for liability and UM coverage do not produce absurd consequences and, thus, the policy must be applied as written. See La. C.C. art. 2046 (“When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”); Green, supra at 776. Additionally, we note there is no statutory or public' policy prohibition against providing more UM coverage than liability coverage.

DECREE

Accordingly, we find that Travelers showed it was entitled to summary judgment as a matter of law on the issue of insurance coverage; specifically, that Encompass’ policy provided ÜM coverage in the amount of $500,000, its policy limits, for Plaintiffs accident. As such, we affirm *839 the judgment of the trial court granting summary judgment in favor of Travelers.

AFFIRMED

LILJEBERG, J., dissents with reasons.

. Plaintiff also named as defendants Elton ■ Holmes, as owner of the offending vehicle; Sale Auto Insurance Company, as Elton Holmes’ uninsured/undorinsured motorist insurance carrier; and, XYZ Insurance Company, as Andre Holmes' insurer.

. Plaintiff later dismissed his claims against Safe Auto -Insurance Company without prejudice. .

. In its motion for appeal, Encompass sought to appeal both the denial of its motion for summary judgment and the granting of Travelers’ motion for summary judgment. While the denial of a motion for summary judgment is not appealable, even if designated as a final judgment by the trial court, we note that both Travelers' and Encompass' motions for summary judgment presented the same issue: the amount of UM coverage provided by Encompass under its policy for Plaintiff's accident. See Short v. Ochello, 01-1358 (La.App. 5 Cir. 2/26/02); 811 So.2d 1009, 1010 (“We find that the denial of a motion for summary judgment is not a final, appealable judgment, the designation by the trial court notwithstanding.’’). The trial court's granting of Travelers' motion for summary judgment necessitated the denial of Encompass’ motion. Thus, in reviewing the granting of summary judgment in favor of Travelers on appeal, we unavoidably consider the basis upon which Encompass' motion for summary judgment was denied. Further, we note that an interlocutory judgment, such as the denial of a summary judgment, may be considered upon review of the final judgment. Occidental Props, v. Zufle, 14-494 (La.App. 5 Cir. 11/25/14); 165 So.3d 124, 130n,10, writ denied, 14-2685 (La.4/10/15); 163So.3d 809.

. Encompass does not challenge that portion of the trial court’s ruling finding Encompass’ UM coverage to be primary.

. The UM Coverage Endorsement's exclusionary provision states, in pertinent part:
1. We do not provide Uninsured Motorists Coverage for bodily injury sustained by:
*837 a, A covered person while occupying or when struck by any vehicle owned by that covered person which is not insured for this coverage under this policy. This includes'a trailer of any type used with that vehicle.
b. Any covered person while occupying your covered motor vehicle when it is being used as a public or livery conveyance. This exclusion (l.b.) does not apply to share-the-expense ear pools.
c.Any covered person using:
(1) Your covered motor vehicle without your express or implied permission; or
(2) Any vehicle, other than your covered motor vehicle, without the express or implied permission of the owner of such vehicle.
(Emphasis in original,)