CARAWAY, J.
This matter concerns a partial summary judgment. Appellants sought the *912 advice of a real estate agent concerning the sale of their property with a reservation of the mineral rights. A prior mineral servitude affected appellants’ property, which was expected to soon prescribe. The agent provided appellants with an inaccurate date that they could sell the property and validly reserve the mineral rights after the extinguishment of the prior servitude. Thereafter, the agent entered into an agreement with appellants to purchase the property, but later he could not produce the full purchase amount. Eventually, the property was sold to a company that was owned by a co-worker of the agent. Appellants filed suit against the agent and his insurer after they discovered that their mineral reservation was ineffective and they did not reserve the mineral rights. Subsequently, the insurer filed a motion for summary judgment concerning its policy exclusion and the trial court granted the motion. Finding that a genuine issue of material fact exists, we reverse and remand.

Facts

In 2008, Jim and Freída Heath (“Appellants”) 'contacted Derek Eason (“Eason”), a real estate agent, to assist them in the sale of 520 acres (the “Property”) that they owned in Webster Parish. At the time, Eason was employed with Recreational Land Investments, LLC d/b/a Mossy Oaks Properties of Louisiana (“Mossy Oaks”). Appellants explained to Eason that the Property was subject to a mineral servitude, and that due to a prior agreement, they could only sell the Property once this servitude extinguished and the mineral rights reverted to them. Subsequently, Eason advised Appellants that this could be done in January of 2011 and that he would be interested in purchasing the Property for himself.
In December of 2008, Appellants agreed to sell the Property to Eason for $600,000. Pursuant to this agreement, Eason signed a preliminary purchase agreement (“Purchase Agreement”). The Purchase Agreement stipulated that “No oil, gas or hydrocarbons will transfer with sale of surface rights.” Furthermore, Appellants granted Eason a lease over the Property until the stipulated closing date of January 5, 2011. In return, Eason was required to make two lease payments of. $20,000, and a deposit of $20,000, equaling a total price of $60,000. Moreover, the Purchase Agreement stipulated that this $60,000 would count toward the full purchase price.
In late 2010, as time neared the closing date, Eason claims that he realized he did not have the money to close on the Property. So, he claims that he contacted Woo-dus Humphrey (“Humphrey”) to inquire as to whether Humphrey would be interested in purchasing the Property. At the time, Humphrey was also employed with Mossy Oaks. Humphrey indicated that he was interested and on January 20, 2011, Appellants sold the Property to Rolling Hills L.L.C., which was partially owned by Humphrey. The Property was sold under the terms of the Purchase Agreement for $540,000 and included the reservation of the mineral rights. The closing attorney for this sale was Jeffrey Norris. Shortly thereafter, Rolling Hills sold the Property to another party.
In August of 2012, Appellants discovered that when they sold the Property to Rolling Hills, they did not own the mineral rights. An oil and gas attorney advised them that the mineral servitude did not extinguish on the Property until March 25, 2012. Therefore, the mineral rights did not revert to the surface owner until March 25, 2012.
On July 1, 2013, Appellants filed suit against multiple parties, including Eason, and his real estate errors and omissions insure, Continental Casualty Company *913 (“Continental”). Appellants argued that their loss of the mineral rights was due to the fault of Eason, specifically in providing an inaccurate date that the mineral rights would revert to the surface owner. Therefore, Appellants argued that they were entitled to damages for Eason’s breach of his fiduciary duty as agent/mandatory. Subsequently, Eason, Humphrey, and Norris each gave depositions.
On' May 10, 2014, Continental filed a motion for partial summary judgment. Continental argued that its Insurance Policy (the “Policy”) unambiguously does not provide coverage for claims arising out of real estate transactions where the insured, in this ease Eason, attempted to purchase the Property at issue. In support, Continental attached a portion of Eason’s deposition, the Purchase Agreement, the Policy, and a certificate of coverage showing that Eason was an insured.
In . opposition, Appellants argued that the Policy’s exclusionary provision is inapplicable because their claim against Eason is related to the sale to Rolling Hills, not to Eason’s initial attempted purchase of the Property. Appellants further averred that material facts were in dispute. Appellants submitted that Eason did not attempt to purchase the Property in his individual capacity and, instead, the evidence suggests that Eason was working as an undisclosed agent for Rolling Hills. Appellants averred that the evidence shows that Eason never paid any of the installment payments as required under the Purchase Agreement. In support, Appellants attached the affidavit of Jim Heath, the affidavit of the attorney who provided Appellants the accurate date when the mineral rights reverted to the surface owner, a portion of Humphrey’s deposition, and a portion of Norris’ deposition.
In response to Appellants’ opposition, Continental supplemented its motion with additional portions of Eason’s and Humphrey’s depositions. Similarly, Appellants supplemented their opposition with three checks showing that Eason did not make the installment payments, but rather that they were made by Humphrey.
The trial court held hearings concerning Continental’s motion for summary judgment on June 16, 2014, and January 14, 2015. At the end of the second hearing, the trial court granted Continental’s motion. This judgment was later signed as a final judgment and the Appellants appealed.

Discussion

On appeal, the sole issue before us is whether the following exclusionary provision contained in the Policy is applicable to support the trial court’s grant of summary judgment in favor of Continental:
VI. EXCLUSIONS
This insurance does not apply to any Claim alleging, arising from or related to:
[[Image here]]
J. Owned or Purchased Property
Professional Services relating to property purchased or attempted to be purchased by any of the following: an Insured; Insured’s spouse; or any entity, partnership, or trust in which the Insured or Insured’s spouse owned or controlled more than 25% ownership or financial interest.
Appellants argue that material issues of fact exist concerning the Purchase Agreement and Eason’s real role in that contract. Appellants also submit that Ea-son’s negligent act was providing them with the incorrect date they could sell the Property and validly reserve the mineral rights. However, they argue that this act resulted in their harm not because of the *914 Purchase Agreement, but the sale itself. Appellants aver that they did not suffer damage from Eason’s negligent act until they sold the Property , to Rolling Hills. Therefore, Appellants argue that their claim against Eason arises out of the sale of the property to Rolling Hills.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smitko v. Gulf S. Shrimp, Inc., 11-2566 (La.7/2/12), 94 So.3d 750; Rain and Hail, L.L.C. v. Davis, 49,813 (La.App.2d Cir.5/20/15), 165 So.3d 1204. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2); Rain and Hail, supra. A “genuine issue” is a “triable issue,” or one as to which reasonable persons could disagree. Champagne v. Ward, 2003-3211 (La.1/19/05), 893 So.2d 773, 777. A “material fact” is a fact whose existence or- nonexistence is essential to a cause of action under the applicable theory of recovery. Id. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. La. C.C.P. art. 967(B); Luther v. IOM Co., 13-0353 (La.10/15/13), 130 So.3d 817; Brooks v. Transamerica Financial Advisors, 45,833 (La.App.2d Cir.2/2/11), 57 So.3d 1153.
Under the Policy, “claim” and “professional services” are defined terms. “Claim” is defined, in pertinent - part, as follows:
Service of a lawsuit ... against the Insured;
seeking Damages and alleging a negligent act, error, or omission in the performance or failure to perform Professional Services.
“Professional services” is defined, in pertinent part, as:
1. Services performed by the Licensee as a real estate broker or salesperson as defined in Louisiana real estate license law and for which Licensee is required to have a real estate license, provided all necessary licenses are held by the Licensee at the time of the act, error or omission giving rise to the Claim, including auctioning real property and Property Management Services performed by the Licensee;
* * * * * *
3. Services performed or advice given by the Licensee, including as a notary public and as a real estate consultant or counselor in connection with the services as a Licensee in 1., above.
The parties do not dispute that Eason’s negligent act was providing an inaccurate date that Appellants could sell the Property and validly reserve the mineral rights. Eason’s negligence caused Appellants damages upon the sale of the Property to Rolling Hilís.. Moreover, there is no dispute that Eason was acting in furtherance of his “Professional Services.” Thus, the issue then is whether this “Claim” arose from or relates to Eason’s alleged attempt to purchase the Property.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Green ex rel. Peterson v. Johnson, 14-0292 (La.10/15/14), 149 So.3d 766. The responsibility of the judiciary in interpreting insurance contracts is to de *915 termine the parties’ common intent; this analysis is begun by reviewing the words of the insurance contract. Id. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent, and courts must enforce the contract as written. La. C.C. art.2046; Id. The determination of whether a contract is clear or ambiguous is a question of law. Green, supra. Any doubt or ambiguity in an insurance policy must be construed in favor of the insured and against the insurer, and when the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Williams v. USAgencies Casualty Ins. Co., 50,185 (La.App.2d Cir.9/30/15), 186 So.3d 96.
Appellants argue that the “attempted to be purchased” clause in the Policy upon which Continental relies presents genuine issues of material fact concerning whether Eason ever attempted to purchase the Property for himself. They submit that the evidence is undisputed that Eason never made any payments toward the purchase of the Property. Instead, Appellants assert that the payments were made by Humphrey, a member of Rolling Hills. Therefore, Appellants argue that this fact creates a genuine issue of material fact as to whether Eason was in fact the party at interest in the preliminary Purchase Agreement. If Eason never had intent to purchase, which is circumstantially indicated, then the exclusionary provision in the Policy is inapplicable. We agree.
In his deposition, Eason stated that he wanted to use the Property for a “recreational and timber investment tract.” However, he also stated that pursuant to the Purchase Agreement, he made the three installment payments of $20,000 pri- or to the closing date. But, Eason’s assertion was disputed by the testimony of Humphrey, who testified that he, Humphrey, made the three payments. Humphrey’s testimony was confirmed by three checks paid by Humphrey to Heath, which Appellants submitted in their opposition to summary judgment. These checks not only disprove Eason’s assertion about having made the installment payments, but more importantly, they also call into question the credibility of another statement asserted by Eason.
Eason stated that he did not contact Humphrey about assigning his interest in the Purchase Agreement until near the closing date of the sale in January of 2011. However, the date on the first check paid by Humphrey is listed as January 28,2009. Additionally, the testimony of Norris revealed that even though Eason contracted to buy the Property, Norris knew that Eason did not have the $600,000 to close on the Property, Eason’s disproven testimony, the checks, and the testimony of Norris all show that reasonable persons could disagree as to whether Eason attempted to purchase the Property for himself. Accordingly, we find that a genuine issue of material fact exists as to whether Eason attempted to purchase the Property for himself.
Moreover, from the Policy definition of “Claim,” we find that Appellants’ Claim rests clearly upon the 2011 sale and not upon whatever the involvement of Eason in the 2008 Purchase Agreement. From this policy definition, the excluded “Claim” requires that Eason performed a negligent act and caused damages from his involvement related to the Purchase Agreement. No damages occurred at that early stage, whether Eason or Humphrey is ultimately determined to be the party at interest in that executory , agreement. The damages only arose and were related to the 2011 *916 Sale to Rolling Hills. Accordingly, the ruling of the trial court in granting summary judgment is reversed.

Conclusion

The judgment of the trial court granting Continental’s motion for partial summary judgment is reversed and remanded for further proceedings. The cost of this appeal is assessed against Continental.
REVERSED AND REMANDED.