ROBERT A. CHAISSON, Judge.
| gPlaintiff/appellant, Elaine Aderholt (“Mrs. Aderholt”), appeals a trial court judgment that denied her claim for damages for termination from employment based on age discrimination. For the reasons that follow, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

Mrs. Aderholt was hired by defendant/appellee, Metro Security, Inc. (“Metro Security”), in January of 2006, to work as a gatehouse attendant at Gabriel Properties in Kenner, Louisiana. At the time she was hired, Mrs. Aderholt was seventy-four years old. On February 17, 2012, after six years with the company, Mrs. Aderholt was discharged from her employment. At the time of her termination, she was eighty years old.
On March 8, 2013, Mrs. Aderholt filed a petition for damages against Metro Security, alleging that she was terminated because of her age. In the petition, Mrs. Aderholt asserted that during her employment, she was subjected to a pattern of Rage discrimination which culminated when the owner of the company, Lloyd Jarreau, told her that she was too old to be doing this type of work. Mrs. Aderholt alleged that she “complained about these comments to management to no avail,” and that on February 17, 2012, she was retaliated against and was discharged from her employment. She claimed that as a result of her termination, she suffered severe emotional injuries, and she specifically requested damages for past, present, and future emotional pain and suffering, as well as lost wages.
The matter proceeded to a bench trial on July 22, 2014. At trial, Mrs. Aderholt testified that she was hired by the company right after Hurricane Katrina, even though she was in her seventies, and that she worked for Metro Security for about six years. During those six years, she worked as a gatehouse attendant at Gabriel Properties, and her duties included opening the gate, letting cars in, and taking their license plate numbers. Mrs. Ad-erholt maintained that she could perform all her duties as well as any of the other guards, and that she was fired because of her age.
When asked about any infractions, Mrs. Aderholt testified that she was late approximately five times during the six years of her employment and that other employees committed more serious infractions on the job, such as falling asleep, drinking alcohol, being constantly late, and getting caught with illegal drugs. According to Mrs. Aderholt, these employees were much younger than her, and to her knowledge, they were not fired or suspended for these infractions. Mrs. Aderholt asserted that the younger employees were treated differently than her, and they “got away with anything” and were not written up. In maintaining that she was fired because *638 of her age, she testified that in February of 2012, she had a conversation with the owner of the company, Mr. Jarreau, and he asked her how |4old she was and suggested that she should retire. Shortly after this conversation, Mrs. Aderholt was fired.
James Aderholt, plaintiffs husband and former employee of Metro Security, also testified at trial. Mr. Aderholt testified that his wife was fired “because of her age and slow job performance.” According to Mr. Aderholt, who was employed by Metro Security for nine years, he had seen employees who committed more serious infractions than those alleged against his wife and they still kept , their jobs. He specifically recalled that while he was employed as a road supervisor for the company, he saw employees sleeping on duty and habitually coming in late. He claimed that he would turn write-ups in to the office for these infractions; however, to his knowledge, these employees were not fired. In addition, he testified that an employee was found masturbating while on duty, and to his knowledge, this employee likewise was not fired but rather was transferred to another neighborhood. Mr. Aderholt also testified that on two occasions Mr. Jarreau questioned him about his wife’s age and whether he thought his wife should still be working.
Mr. Jarreau, the owner of the company, was also called as a witness at trial. He acknowledged that Mr. and Mrs. Aderholt were both employed by his company and were good employees. According to Mr. Jarreau, when Mrs. Aderholt first started working for his company shortly after Hurricane Katrina, “she was great,” and he made every effort to accommodate her health issues and her need to miss work to go to doctors’ appointments. However, he testified that during the last six months of her employment, her work performance deteriorated and “gradually got to be less than okay.” Mr. Jarreau further testified that he did not fire Mrs. Aderholt because of her age, but rather he fired her because her job performance was substandard and the duties that were required of her at the gate were not being [ ¡^performed sufficiently. He explained that his company received numerous complaints about cars being backed up at the gate, that she let large trucks into the community, that she was slow letting people in the gate, and that she took excessively long bathroom breaks. Based on her inadequate work performance, Mr. Jarreau called her into his office for a termination interview. He advised her that her work was less than acceptable and that he did not have a more sedentary post to move her to; therefore, he would have to terminate her. During his testimony, Mr. Jarreau admitted that he asked Mrs. Aderholt her age, but only after the interview was complete insofar as the terms of her discharge from employment. However, he denied having any conversations with Mr. Aderholt about her age.
Mr. Jarreau further testified that he applied his disciplinary standards across the board without regard to the age of the employees. He maintained that when infractions were brought to his attention, he investigated the allegations and would then take the necessary corrective action.
In'addition to Mr. Jarreau’s testimony, other employees testified at trial during the defense’s case about Mrs. Aderholt’s work performance. Angie Johnson, employed by Metro Security as an office manager, recalled an incident in late 2012 when Mrs. Aderholt summoned her to the guard shack to fix the fax machine. When she arrived, she waited in the unattended guard shack for about twenty minutes until Mrs. Aderholt came back from the bathroom.
*639 In addition, Michael Judice, a former employee of Metro Security, testified that he was Mrs. Aderholt’s supervisor during part of her employment with the company. He relayed several problems with Mrs. Aderholt’s performance. Specifically, he testified that he was aware that Mrs. Ad-erholt removed notes that were placed in the guard house by Metro Security and Gabriel Properties and that she failed to follow procedure for letting people into the area to look at the | fiproperty. In addition, when he pointed out that Gabriel Management had posted a sign about not feeding the animals, Mrs. Aderholt made some rather derogatory remarks about what the company could do with its orders and regulations. Mr. Judice further recalled an incident when he wrote up Mrs. Aderholt for an infraction and she tore it up and threw it in his face. He then explained what happened when he offered her a second write up:
... I offered her a second writeup which she also refused to sign. And I told her that if she tore that one up, then I would have no recourse but to immediately contact the office and request that she be removed from the post. Instead, she refused to sign it. She told me what I could do with it, at which point I stated on the writeup that she refused to sign, went to the office, explained the situation to Lloyd, and told him that I did not feel that she was suitable for that post anymore. She had been nothing but problematic for months; and that she was being insubordinate. She was being derogatory. She was being offensive to other people; and that I just did not feel that she was a viable worker for that post because of a poor attitude and misconduct.
Scotty Smith, an employee of Metro Security and a former employee of Gabriel Properties, testified that when he was employed by Gabriel Properties, he would sometimes see cars backed up at the gate. When he went to the guard house to see what was causing the backup, he observed Mrs. Aderholt reading the newspaper and not letting people in. In addition, Mrs. Aderholt would let big trucks into the property, and he alerted Metro Security about that issue. Once Mr. Smith started working for Metro Security, Mrs. Ader-holt, on multiple occasions, would call him to relieve her so she could go to the bathroom or leave early.
After considering the evidence presented by both Mrs. Aderholt and Metro Security, the trial court took the matter under advisement. Thereafter, on August 6, 2014, the trial court rendered judgment in favor of Metro Security and dismissed Mrs. Ad-erholt’s claim for damages based on age discrimination. From this | judgment, Mrs. Aderholt now appeals. She raises the following two issues: 1) the trial court erred by dismissing plaintiffs evidence as hearsay after the matter was submitted, despite the fact that said evidence was admitted at trial without objection by defense counsel; and 2) the trial court erred when it misapplied the test to determine if remarks made by Mrs. Aderholt’s employer were sufficient to create an inference of age discrimination. For the reasons that follow, we find no merit to these arguments and accordingly affirm the judgment of the trial court which dismissed Mrs. Aderholt’s claim for damages.

LAW AND ANALYSIS

In her first assigned error, Mrs. Aderholt complains that after the matter was submitted and taken under advisement, the trial court found that her allegations about misconduct by other employees were hearsay. She specifically objects to the following language in the trial court’s reasons for judgment:
*640 Mrs. Aderholt attempted to show that other employees had performance shortcomings but had not been fired. There were allegations of other employees caught sleeping on the job, who were not terminated. There were allegations of an employee who was caught masturbating while on duty, who was not terminated. There were allegations of an employee having marijuana in her purse, who was not fired. The Court found many of these allegations to be hearsay. Further, Metro Security investigated these allegations and acted in a manner that they deemed appropriate. These allegations do not lead the Court to find that Mrs. Aderholt was terminated because of age discrimination. There were myriad performance problems with Mrs. Aderholt over the course of her employment at Metro Security, any one of which would have justified Mrs. Ader-holt’s termination. (Emphasis added)
Mrs. Aderholt now contends that the trial court erred in classifying her evidence of employee misconduct as hearsay and in excluding it from consideration after the trial had been completed. Her counsel points out that defense counsel did not lodge any hearsay objections to this evidence, and thus, the trial court should have considered this evidence in making its ruling. Mrs. |sAderholt contends that the task of the trier of fact is to make credibility determinations and weigh all admitted evidence, and that her rights were substantially affected by the trial court’s failure to consider this evidence that was admitted at trial without objection.
To the extent that plaintiff argues that the trial court’s reasons for judgment which excluded the evidence are in direct conflict with the fact that the evidence was admitted at trial without objection, we note that the reasons for judgment are not the judgment itself. Appeals are taken from the judgment, not the written reasons for judgment. LSA-C.C.P. art. 1918. Reasons for judgment set forth the basis for the court’s holding and are not binding. Metairie Carnival Club, Inc. v. Lundgren, 12-246 (La.App. 5 Cir. 10/20/12), 102 So.3d 999, 1002.
Moreover, we find that plaintiff misconstrues the trial court’s language in its reasons for judgment. Based on our reading of the reasons for judgment, we see no indication that the trial judge excluded this evidence in making his determination. He stated that many of the allegations of employee misconduct were hearsay, but then went on to state that “these allegations do not lead the Court to find that Mrs. Ader-holt was terminated because of age discrimination.” Thus, the trial court seemingly considered the allegations but then discounted the probative value of that evidence. Accordingly, we find no merit to the arguments presented by plaintiff in her first assigned error.
In her second alleged error, plaintiff contends that the trial court erred when it misapplied the test to determine if remarks made by her employer were sufficient to create an inference of age discrimination. She further contends that since the trial court committed an error of law, this Court should conduct a de novo review of the matter. We likewise find no merit to these arguments.
| ¡)In an employment discrimination case, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. In order to prove a prima facie case of age discrimination, the plaintiff must show that: 1) she is in the protected age group (over age forty); 2) her employment with the defendant was involuntarily terminated; and 3) she was qualified to perform the job she was employed to perform. Establishing a prima facie case in effect creates a presumption that *641 the defendant unlawfully discriminated against the plaintiff. Montgomery v. C & C Self Enterprises, Inc., 10-705 (La.App. 3 Cir. 3/30/11), 62 So.3d 279, writ denied, 11-873 (La.6/3/11), 63 So.3d 1016.
If the plaintiff succeeds in establishing a prima facie ease of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its conduct. This burden on the defendant is one of production, not persuasion. La-Bove v. Raftery, 00-1394 (La.11/28/01), 802 So.2d 566, 573-74. If the defendant provides such reasons, the plaintiff will then have an opportunity to prove, by a preponderance of the evidence, that the defendant’s proffered reasons were merely pretext, or in other words, not the true reason for the alleged discrimination. Montgomery v. C & C Self Enterprises, Inc., 62 So.3d at 282. This may be accomplished either directly, by showing that a discriminatory reason more than likely motivated the employer, or indirectly, by showing that the asserted reason is unworthy of credence. Eastin v. Entergy Corp., 09-293 (La.App. 5 Cir. 7/27/10), 42 So.3d 1163, 1186, writ denied, 10-2261 (La.10/29/10), 48 So.3d 1088, writ denied, 10-2252 (La.10/29/10), 48 So.3d 1088, writ denied, 10-2002 (La.11/12/10), 49 So.3d 888.
 The plaintiff always bears the ultimate burden of proving to the trial court that his or her evidence establishes intentional discrimination; it is not enough that the trial court simply disbelieves the employer’s proffered reasons. Montgomery v. C & C Self Enterprises, Inc., 62 So.3d at 287. The plaintiff must establish, by a preponderance of the evidence that age was the “but for” reason the employer terminated the plaintiff, as opposed to merely a motivating factor. Eastin v. Entergy Corp., 42 So.3d at 1182.
At trial, Mrs. Aderholt presented evidence that younger employees committed more serious infractions than she did, including sleeping on the job, drinking alcohol, being constantly late, getting caught with illegal drugs, and masturbating while on duty. According to the testimony of Mr. and Mrs. Aderholt, these employees were not fired for their more serious infractions. In addition, Mr. Aderholt testified that Mr. Jarreau asked him about his wife’s age on two occasions, and Mrs. Ad-erholt testified that Mr. Jarreau asked her about her age shortly before she was terminated.
Defendant thereafter presented evidence to show that age was not a factor in the decision to terminate Mrs. Aderholt, but rather her work performance was no longer adequate. In particular, testimony by Mr. Jarreau and Mr. Judice showed that Mrs. Aderholt allowed cars to get backed up at the gate, disregarded company rules and regulations about feeding animals and letting trucks into the gate, was insubordinate to her supervisors, and went around the chain of command when requesting leave. With regard to the alleged statements about plaintiffs age,'Mr. Jar-reau admitted that he asked Mrs. Aderholt her age, but only after the termination interview was completed; Mr. Jarreau denied having any conversations with Mr. Aderholt about his wife’s age.
After considering the evidence presented, the trial court rendered judgment in favor of Metro Security and dismissed Mrs. Aderh'olt’s claim against the company. In its reasons for judgment, the trial court set forth the proper burden of proof in age discrimination cases and found that “Metro Security terminated h plaintiff for good cause and for reasonable factors other than age or retaliation. Plaintiff fails to show that the protected trait, herein age, actually motivated the employer’s decision and was a determinative influence on the outcome, as required by law.”
*642 Mrs. Aderholt now challenges the trial court’s finding that she failed to meet her burden of proving age discrimination. She contends that the trial court misapplied the law when it found that the alleged statements made by Mr. Jarreau about plaintiffs age constituted “stray remarks” that did not support a conclusion that age was the reason for the discrimination. Although Mrs. Aderholt frames her argument in terms of misapplication of the law, she is actually challenging the trial court’s factual determination that the remarks did not constitute sufficient proof to meet her burden.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test. First, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court. Second, the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). In essence, this test means a reviewing court must do more than simply review a record for some evidence which supports the trial court’s finding; it must determine that the record, as a whole, establishes the trial court was justified in its conclusion. Royal Oldsmobile Co. v. Heisler Properties, L.L.C., 12-608 (La.App. 5 Cir. 5/16/13), 119 So.3d 84, 94.
[ ^Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous. Where the factfinder’s conclusions are based on determinations regarding the credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what was said. Rosell v. ESCO, 549 So.2d at 844; Aleman v. Allstate Ins. Co., 04-948 (La.App. 5 Cir. 1/11/05), 894 So.2d 382, 384.
On the review of the record before us, we cannot say that the trial court’s factual determinations were manifestly erroneous or clearly wrong. In particular, we note that Mrs. Aderholt was seventy-four years old when she was hired by Metro Security, and Metro Security had, in its employ, a worker older than Mrs. Aderholt. In addition, as more fully set forth in the facts, Mrs. Aderholt’s supervisor relayed specific problems with Mrs. Aderholt’s work performance, including failure to perform her duties at the gate, failure to follow company rules and regulations, and insubordination. In fact, Mrs. Aderholt, during her testimony, admitted that she refused to sign the write-up and told Mr. Judice what he could do with it. She further admitted that she went around the chain of command.
Mrs. Aderholt specifically complains about the trial court’s finding with regard to the remarks by Mr. Jarreau about her age. At trial, Mrs. Aderholt testified that in February of 2012, Mr. Jarreau asked her about her age and suggested that she should retire, and shortly thereafter, she was terminated. Mr. Ader-holt testified that on two occasions, Mr. Jarreau asked him about his wife’s age and whether he thought his wife should still be working. Mr. Jarreau denied having any conversations with Mr. Aderholt about his wife’s age. However, he admitted asking Mrs. Aderholt her age, but maintained that conversation occurred 113after the termination interview was complete. Mrs. *643 Aderholt now contends that the trial court should have found these remarks sufficient proof of age discrimination. In order for an age-based comment to be probative of an employer’s discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inference or presumptions that age was a determinative factor in the decision to terminate the employee. Eastin v. Entergy Corp., 42 So.3d at 1183. This Court further stated in Eastin:
Comments by supervisors and executives may serve as sufficient evidence of age discrimination if the comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. Comments that are ‘vague and remote in time’ are insufficient to establish discrimination. Moreover, ‘stray remarks’ do not demonstrate age discrimination. (Citations omitted)
Id. at 1181.
In the present case, the trial court considered these factors and found that Mr. Jarreau’s comments were stray remarks that did not support a conclusion that age was the reason for the termination. We agree with the trial court’s characterization of Mr. Jarreau’s statements as stray remarks and find that the record supports this determination. There is no indication in the record that the statements allegedly made by Mr. Jarreau to Mr. Aderholt were made in the context of decision making as to Mrs. Aderholt’s employment or even near the time of discharge. Likewise, with regard to Mr. Jarreau’s question to Mrs. Aderholt about her age, the trial court could have reasonably credited Mr. Jarreau’s testimony that he asked the question after the termination interview was complete. We further note that when Mrs. Aderholt was asked whether Mr. Jar-reau asked her age in their February 2012 conversation, she replied, “in a roundabout way.”
^^Accordingly, for the reasons set forth herein, we affirm the judgment of the trial court in favor of Metro Security which dismissed Mrs. Aderholt’s claim for damages.

AFFIRMED