ROBERTA. CHAISSON, Judge.
Lin this insurance coverage dispute, plaintiffs, William and lone Power, appeal from a judgment of the trial court in favor of defendant/insurer, State Farm Fire and Casualty Company (“State Farm”). The trial court based this judgment on its determination that the water damage to the Powers’ home resulted from a continuous or repeated seepage or leakage of water and therefore was not a covered loss under the provisions of the homeowner’s insurance policy. On appeal, the Powers raise claims that the policy provision excluding coverage was ambiguous, that the trial court applied the wrong burden of proof, and that the trial court improperly determined, based on the evidence presented, that the leak was long term. For the reasons that follow, we find no merit to the arguments set forth by the Powers and accordingly affirm the judgment of the trial court in favor of State Farm.

*473
FACTS AND PROCEDURAL HISTORY

In March of 2013, Mr. Power discovered mildew in his kitchen and thereafter reported to his State Farm agent, Kurt LeBlanc, that his home may have | aa water leak. According to Mr. Power, Mr. LeBlanc advised him that he would report the claim to State Farm and further told him to call someone to look at the leak. Mr. Power thereafter contacted Kurt Muller, his contractor, and informed him about the possible water leak. Mr. Muller went to the Powers’ house and determined that the water damage in the kitchen was caused by a leak in a copper elbow in the wall behind the refrigerator. Mr. Muller prepared an estimate in the amount of $21,201.18, dated March 21, 2013, for repair of the damages to the kitchen as a result of the water leak.
According to the State Farm file, the loss was first reported on March 27, 2013. On the following day, Krista Bess, a State Farm claims representative, spoke with Mr. Power and Mr. Muller about the claim and thereafter assigned the case to Jose Ortiz, a claims adjuster. Mr. Ortiz contacted Mr. Power and made arrangements to inspect the property on Monday, April 1, 2013. By the time the adjuster arrived at the house, Mr. Muller had already gutted the kitchen and discarded the bottom kitchen cabinets. In addition, the upper kitchen cabinets had been removed and installed in the garage, and the leaking elbow and pipes had been replaced. Based on his inspection of the area, his conversation with Mr. Power and Mr. Muller, and his review of the initial information in the case file, Mr. Ortiz concluded that the leak had been continuous for a period of time.
On April 5, 2013, State Farm sent the Powers a letter advising them that their claim for the damages resulting from the water leak was denied because of the insurance policy’s exclusion of losses arising out of a long term water leak. State Farm also denied coverage for damage to the cabinets because they were discarded without affording State Farm the opportunity to inspect them, in violation of the policy’s clause relating to the duties of the insured.
|4On November 7, 2013, the Powers filed a petition for damages against State Farm seeking to recover benefits under their State Farm policy for the water damage to their kitchen. They further alleged that they were entitled to penalties, attorney’s fees, and court costs based on State Farm’s arbitrary and capricious refusal to pay their claim. The matter proceeded to a judge trial on April 30, 2015. After considering the evidence presented, the trial court took the matter under advisement and, on May 14,2015, rendered judgment in favor of State Farm for the reasons assigned in open court. The Powers now appeal.

LAW AND ANALYSIS-

Ambiguity in policy provision

On appeal, the Powers contend that the trial court erred in determining that the policy provision upon which State Farm relied to exclude coverage was unambiguous. The determination of whether a contract is clear or ambiguous is a question of law. Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577, 580; Elliot v. Holmes, 15-296, 15-297 (La.App. 5 Cir. 11/19/15), 179 So.3d 831, 835, writ denied, 16-14 (La.3/24/16), 190 So.3d 1195. Questions of law are reviewed de novo without deference to the legal conclusions of the trial court. Wooley v. Lucksinger, 09-571 (La.4/1/11), 61 So.3d 507, 554.
The insurance policy provided to the Powers insures for “accidental direct phys *474 ical loss to the property described in Coverage A, except as provided in SECTION I — LOSSES NOT INSURED.” The particular provision in Section I at issue in the instant case provides as follows:
SECTION I — LOSSES NOT INSURED
1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whethér the loss occurs suddenly or gradually, | .-¡involves isolated or widespread damage, arises from natural or''external forces, or occurs as' a result of any combination of these: '
[[Image here]]
f. continuous or repeated seepage.or leakage of water or steam from a:
(1) heating, air conditioning or automatic fire protective sprinkler system;
(2) household appliance; or.
(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;
which occurs over a period of time. If loss to covered property is caused by water or steam. not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or- appliance from which the water or steam escaped;
In Farciert v. U.S. Agencies Cas. Ins. Co., 13-626 (La.App. 5 Cir. 12/19/13), 131 So.3d 1020, 1024-25, this Court set forth the law regarding the interpretation of insurance contracts as follows:
An insurance policy is a contract between the parties and should be construed by using .the general rules of interpretation of contracts set forth in the, Louisiana Civil Code. Carbon v. Allstate Insurance Co., 97-3085 (La.10/20/98), 719 So.2d 437, 439. The court’s role, in interpreting insurance .contracts is. to ascertain the common intent of the parties to the contract. LSA-C.C.;art. 2045; Cadwallader v. Allstate Insurance Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580. The parties’ intent, as reflected by the words in the policy, determines the extent of coverage. Louisiana Ins. Guar. Ass’n. v. Interstate Fire and Cas. Co., 93-911 (La.1/14/94), 630 So.2d 759, 763. Such intent is to be determined in accordance with the plain, ordinary, and general meaning of the words used in the policy, unless the words have acquired a technical meaning. Id.; LSA-C.C, .art. 2047.
If the words of a policy are clear and unambiguously express the parties’ intent, the insurance contract must be enforced as written. , Cadwallader, 02-1637 at 4, 848 So.2d at 580. Courts do not have the authority to alter the terms of insurance contracts when the policy’s provisions are couched in unambiguous terms.- Id. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon lfithe policy obligations they contractually assume. Louisiana Ins. Guar. Ass’n, 630 So.2d at 763.
The Powers argue that the policy provision at issue is ambiguous, undefinable, and irreconcilable, and therefore, it should be construed against State Farm and in favor of coverage. In particular, they contend that the language, used to *475 exclude coverage is ambiguous because it fails to define or set forth any standards or guidelines for a determination of what constitutes a “continuous or repeated seepage or leakage of water ... which occurs over a period of time.” They further assert that State Farm has never been able to provide an approximate time frame that constitutes “over a period of time” but rather makes such determinations on a case by case basis.
. The Powers maintain that at least one Louisiana case, Primm v. State Farm Fire and Casualty Co., 426 So.2d 356, 360 (La. App. 2nd Cir.1983), has ruled that similar language in a State Farm policy was ambiguous; therefore, this Court should likewise find the instant contested provision ambiguous and construe it in favor of coverage. However, that case is clearly distinguishable. In Primm, supra, the court held that an exclusion in a homeowner’s policy for damages from the “leakage or seepage of water or steam unless sudden and accidental” was ambiguous. The ambiguity, however, resulted from the coupling of “leakage or seepage,” which connotes happening slowly, with “sudden and accidental,” defined by the court as unexpected and abrupt. In construing the ambiguity in favor of affording coverage, the appellate court reasoned: “Try as we might, we are unable to reconcile the phrases and have difficulty envisioning a set of circumstances which would afford coverage. For example, it is difficult to imagine an abrupt seepage from an unknown cause.” Id.
|7In their appellate briefs, neither the Powers nor State Farm cites to any Louisiana cases directly on point with the issue presented herein. However, State Farm references a case from another jurisdiction in which the same policy language was found to be unambiguous. In Fifth v. State Farm Ins. Co., 11-7440, 2014 U.S., Dist. LEXIS 39731, 2014 WL 1253542 (D.N.J. Mar. 25, 2014), State Farm alleged that the loss was excluded because it was caused by “continuous or repeated seepage or leakage of water or steam from a ... plumbing system ... which occurs over a period of time.” The plaintiffs in that case argued that the term “a period of time” was ambiguous., and therefore should be construed against State Farm. The court rejected this argument, finding that the failure to define the term did not necessarily render the provision ambiguous. The court reasoned as follows:
Here, the phrase “over a period of time” is undefined. The plain meaning of “period” is “a length of time during which a series of events or an action takes place or is completed.” The plain meaning of “time” is “the thing that is measured as seconds, minutes, hours, days, years, etc.”
Based on the definition of these words, a time period of one month would fit the description. Moreover, in the context of this case, uncontroverted evidence showing that the leak occurred over at least one month would support a finding that, applying the ordinary, plain and usual meaning of the phrase and its terms, the seepage occurred “over a period of time.” [footnotes omitted]
Although this case is not binding on this Court, we nonetheless find it to be instructive and agree with the reasoning set forth therein. Applying the ordinary, plain, and usual meaning of the term’s at issue, we find that the limitation on coverage utilized by State Farm creates no ambiguity under the circumstances in this case with respect to the coverage or lack of coverage - contemplated by the homeowner’s policy.
| ¿Burden of Proof
On appeal, the Powers also argue that the trial court erroneously considered the limitation of coverage as an issue of wheth *476 er their loss fell outside the policy’s definition of covered losses, as opposed to considering the limitation of coverage as an exclusion under the policy. They further assert that due to this error, the trial court improperly placed the burden upon them to prove that the limitation did not apply.[1]
To support their argument that the wrong burden of proof was applied, the Powers point to an exchange in the transcript in which the trial court specifically expressed his belief that the policy limitation was not an exclusion but rather more of a coverage definition. We acknowledge the confusing conversation between the trial court and the Powers’ attorney about the classification of the limitation of coverage. However, regardless of the actual classification used, the conversation ultimately indicates that the trial court was aware that the burden of proving the limitation of coverage was on State Farm. We specifically point to the following portion of the exchange:
THE COURT:
Every policy defines what’s insured and what’s not insured, right. And then they have an exclusion provision in the policy that says we specifically exclude these other items. And, I guess, my question to you is, the cases that you cite that say it’s the defendant’s burden to prove the exclusions, does that apply to the conditions of the policy or those apply to exclusions of the policy.
MR. TOLAR:
We would suggest that it applies to this particular clause upon which State Farm is relying. Yes.
J^THE COURT:
Okay.
The Powers also cite to the trial court’s oral reasons for judgment to support their contention that the trial court applied the wrong burden of proof in making its ruling in favor of State Farm. They specifically reference the trial court’s finding that “based on the totality of the evidence .., the damage that was sustained in Mr. Power’s home appears to be damage which was caused as a result of continuous or repeated seepage or leakage of water which is excluded by the State Farm policy.” They complain because the court, in its reasons, included no finding that State Farm bore and sustained the burden of proof under La. R.S. 22:1893 B, and they further argue that a “totality of the evidence” creating an appearance of a condition does not remotely indicate that State Farm satisfied its burden to prove that the exclusion applied.
We first note that there is no indication in the reasons for judgment that the trial court improperly put the burden of proving the inapplicability of the exclusion on the Powers. Moreover, we note that the reasons for judgment are not the judgment itself. Appeals are taken from the judgment, not the written reasons for judgment. La. C.C.P. art.1918; Aderholt v. Metro Sec., Inc., 14-880 (La.App. 5 Cir. 3/25/15), 169 So.3d 635, 640. Reasons for judgment set forth the basis for the court’s holding and are not binding. Metairie Carnival Club, Inc. v. Lundgren, 12-246 (La.App. 5 Cir. 10/20/12), 102 So.3d 999, 1002.
As the record contains no indication that the trial court applied the wrong burden of proof, we find no merit to the arguments raised by the Powers in this assigned error.
*477 | inCredibility Determinations
In their final assigned error, the Powers challenge the credibility determinations of the trial court and allege that the trial court improperly determined, based on the evidence presented, that the leak was long term. They maintain that State Farm presented absolutely no evidence to prove the exclusion but rather relied solely on the testimony of State Farm representatives that Mr. Power had mentioned to them the leak had been ongoing for several months. The Powers further assert that had the trial court applied the proper legal standard to the evidence, they would have prevailed. In support of this argument, they focus on the credibility of Mr. Ortiz and specifically point to many inconsistencies and alleged misstatements in his testimony.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test. First, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court. Second, the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). In essence, this test means a reviewing court must do more than simply review a record for some evidence which supports the trial court’s finding; it must determine that the record, as a whole, establishes the trial court was justified in its conclusion. Royal Oldsmobile Co. v. Heisler Properties, L.L.C., 12-608 (La.App. 5 Cir. 5/16/13), 119 So.3d 84, 94.
Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous. Where the factfinder’s conclusions |nare based on determinations regarding the credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what was said. Rosell v. ESCO, 549 So.2d at. 844; Aleman v. Allstate Ins. Co., 04-948 (La.App. 5 Cir. 1/11/05),. 894 So.2d 382, 384. The resolution of whether an insurance policy exclusion applies to exclude coverage in a particular case may present a mixed question of law and fact. See Doerr v. Mobil Oil Corp., 00-947 (La.12/19/00), 774 So.2d 119, 135 n. 17, opinion corrected on reh’g, 00-947 (La.3/16/01), 782 So.2d 573. Typically, mixed questions of law and fact are subject to. the manifest error standard of review. Ogea v. Merritt, 13-1085 (La. 12/10/13), 130 So.3d 888, 895 n. 6.
■The trial court’s judgment in favor of State Farm was based on its determination that the water damage to the Powers’ home was caused by a “continuous or repeated seepage or leakage of water which is excluded by the State Farm policy.” At trial, the court was faced with conflicting testimony.[2] Mr. Ortiz, the State Farm *478 ciatos adjuster who inspected the property, testified that he met with Mr. Power and Mr. Muller on April 1, 2013, to inspect the damage caused by an alleged water léak in the wall. -Upon his arrival, the kitchen, including the sheetrock, appliances, and cabinets, had been gutted, and the leaking elbow and pipes had already been replaced. However, Mr. Ortiz was shown the copper elbow containing pin size holes that had allegedly leaked and caused the'water damage. Mr. Ortiz admitted in his testimony that it was difficult to determine how long thejjgleak had been going on, but he concluded that it was a continuous leak for a period of time. Mr, Ortiz based his determination on his observation of the area; his conversation with Mr. Power and Mr. Muller in which they had mentioned that it was an ongoing leak for a period of time; and physical evidence, including the corrosion or the residue on the fitting, the mold on the drywall and around the studs, the waterline on the drywall, and the corrosion of the grout line of the ceramic tile in the adjoining laundry room.
Mr, Muller, the contractor, testified in accord with Mr. Ortiz’s testimony that it was impossible to know how long the elbow behind the sheetrock had been leaking. However, Mr. Muller denied telling Mr. Ortiz or anyone else that the leak had been ongoing or occurring for a certain period of time. Mr. Muller further testified .that the copper elbow had two little pinholes that were barely visible, and if it had been a long term leak, the holes would have gradually gotten bigger. Further, he saw no corrosion evidence on the fitting as copper is corrosion resistant. Mr. Muller also testified that when he removed the lower cabinets that were made of particle board, they crumbled; he thereafter put them in garbage bags that were picked up by the garbage men. In addition, Mr. Muller testified that he has seen mold develop in one or two' days from a water leak and that he has seen particle board disintegrate in one day after being exposed to water,
Mr. Power testified that he did not know the duration of the leak, but he denied telling anyone that it had been ongoing. In accord with this testimony, Mr. LeBlanc testified that when Mr.. Power reported this claim to him, he neyer told him how long the pipe had been leaking.
Lastly, the trial court heard the testimony of Ms. Bess, the State Farm claims representative who handled the initial contact with Mr. Power. According to Ms. Bess, she talked to Mr. Power and Mr. Muller on March 28, 2013, at which time 1 isshe was told that there, was water damage that had been going on for several months and there was evidence of mold and mildew. At that point, Ms. Bess explained to them the coverage under the policy and advised them the policy covered accidental direct physical loss but not damage from slow leaks. Ms. Bess testified that she contemporaneously and accurately documented this conversation with Mr. Power and Mr. Muller, in which they told her that “two holes formed in pipes, and has been leaking for several months causing rot to kitchen cabinets.” Shortly after her phone call ended, Ms. Bess made another entry relating to’ her mobile assignment of the case. In this second entry, Ms. Bess noted that the leak had been going on for three months.
In addition to this conflicting testimony, the trial court was presented with other evidence including the actual copper elbow, photographs of the damaged area, the claim file excerpts by State Farm, the petition for damages, the estimate for repairs, and the insurance policy. After considering all of the evidence presented, the trial court determined that the damage to *479 the Powers’ home was the result of “continuous or-,repeated seepage or leakage of water ... over a lengthy period of time’5 and was therefore excluded under the-provisions of the State Farm policy. Our review of the record establishes that the trial court was justified in its conclusion.
Contrary to the Powers’ assertion, the trial court was presented with evidence, other than just the testimony of the State Farm representatives that Mr. Power had mentioned the leak had been ongoing, to support its conclusion about the leak. In particular, we note that the trial court was presented with the copper elbow as well as photographs of the damaged area. The trial court was also presented with' Mr. Ortiz’s' testimony regarding his inspection of the physical evidence, including the corrosion or the residue on the fitting, the mold on the |udrywall and around the studs, the waterline on the drywall, and the corrosion of the grout line on the ceramic tile in the adjoining laundry room, all of which supported the trial court’s determination. Accordingly, on review of the record before us, we find that a reasonable factual basis exists for the findings of the trial court, and that the trial court’s factual determinations were not clearly wrong or manifestly erroneous. Stobar, supra.

CONCLUSION

For the reasons set forth herein, we affirm the judgment of the trial court in favor of State Farm.

AFFIRMED.

. It is well settled that the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Blackburn v. National Union Fire Ins. Co., 00-2668 (La.4/3/01), 784 So.2d 637, 641; Sauviac v. Dobbins, 06-666 (La.App. 5 Cir. 12/27/06), 949 So.2d 513, 517, writ denied, 07-181 (La.3/16/07), 952 So.2d 701.

. In addition to the conflicting testimony about the water leak, the Powers,' in their appellate brief, point to many other inconsistencies and misstatements in the testimony, especially in the testimony of Mr. Ortiz. Although not specifically mentioned in this opinion, we are aware of the inconsistencies mentioned by the Powers; however, we find no reason to disturb the trial court’s credibility determinations based on those inconsistencies, which are inconsequential to the determination of the issue presented herein.