MITCHELL LOEWEN

VERSUS

THE NEW ORLEANS LOUISIANA SAINTS
LLC AND BERKLEY SPECIALTY
UNDERWRITING MANAGERS, LLC

NO. 22-CA-507
C/W
22-CA-508

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7, STATE OF LOUISIANA
NO. 20-6014 c/w 20-6020,
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

June 07, 2023

**CORNELIUS E. REGAN**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Cornelius E. Regan, Pro Tempore

**AFFIRMED IN PART, AMENDED IN PART;**
**REMANDED WITH INSTRUCTIONS**
**CER**
**FHW**
**MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
MITCHELL LOEWEN
    Frank A. Bruno
    Shannon C. Lindsey

COUNSEL FOR DEFENDANT/APPELLEE,
NEW ORLEANS SAINTS AND BERKLEY SPECIALTY
    Christopher J. Kane
    Jennifer C. Bergeron

**REGAN, J.**

Claimant, Mitchell Loewen, seeks review of the workers' compensation court's July 28, 2022 judgment in favor of defendants, the New Orleans Louisiana Saints, L.L.C. ("the Saints") and Berkley Specialty Underwriting Managers, L.L.C. ("Berkley"), dismissing his case against them with prejudice. Mr. Loewen contends that the workers' compensation court erred by failing to award him supplemental earnings benefits, or alternatively permanent partial disability benefits, medical expenses, penalties and attorney fees. For the following reasons, we affirm the judgment in part, amend in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

In May of 2016, Mitchell Loewen was an undrafted free agent, who entered into a contract with the Saints to play football in the National Football League ("NFL"). He worked in the NFL for approximately four years.

Prior to signing with the Saints, Mr. Loewen played football at the University of Arkansas, where he also earned a Bachelor of Science degree in business administration. During his time playing football in college, he suffered injuries, including two anterior cruciate ligament ("ACL") tears in his left knee, one in 2011 and one in 2014, resulting in two ACL revision surgeries. Near the end of the 2015 football season, he broke his right foot which resulted in surgery.

After signing with the Saints in 2016, it was determined that Mr. Loewen's foot had not properly healed and that he needed to have surgery again. Although he was paid by the Saints, Mr. Loewen did not play during the 2016 season due to his foot injury.

Mr. Loewen made the team in 2017, but on September 17, 2017, he injured his left ankle during a regular season football game in New Orleans. Dr. Larry Bankston, the Saints' team physician, diagnosed him with a "left high ankle sprain with deltoid and syndesmotic instability." Mr. Loewen was placed on injured

reserve and had surgery. On March 12, 2018, Dr. Bankston cleared Mr. Loewen to return to playing football. According to Mr. Loewen, although he made the team for the 2018 season, he was "one of those guys that was ready to go but just never used." Near the end of the 2018 football season, Mr. Loewen was released by the Saints, but soon thereafter signed a contract with the Detroit Lions ("the Lions"). According to Mr. Loewen, he was with the Lions for the last game in 2018 and remained with them during the off-season and the 2019 pre-season. However, he was released by the Lions in August 2019 at the end of the preseason.

On September 11, 2019, Mr. Loewen signed a practice player contract with the Saints providing that he would earn $136,000 as a practice squad player for the 2019 season. During practice on December 6, 2019, Mr. Loewen injured his left knee but continued to practice. Dr. Bankston evaluated Mr. Loewen's knee on December 8, 2019, and found that the exam was normal, except for some mild swelling in his joint. He indicated that Mr. Loewen warmed up for practice that day without any issues and was given a prescription for anti-inflammatory medication.

On December 26, 2019, Mr. Loewen re-injured his left ankle at practice. He received treatment from the Saints' training staff, and Dr. Stephen Choate diagnosed him with "left ankle medial deltoid sprain." On January 6, 2020, Mr. Loewen reported to Dr. Bankston that his ankle was not bothering him, but he was having problems with his knee getting "stuck" and needing to manipulate it to get it "unlocked." Dr. Bankston recommended arthroscopic surgery on his left knee or debridement, which he described as "cleaning up anything that is loose that could be causing some aggravation to the joint or potentially mechanical symptoms." Dr. Bankston performed arthroscopic surgery on Mr. Loewen's left knee on January 10, 2020. On February 12, 2020, Dr. Bankston noted that Mr. Loewen was doing great and felt like his pain was resolved, so he was cleared to return to

normal training. According to Mr. Loewen, he continued to have knee problems but did not report them to the Saints because he was "a practice squad player trying to make the team."

On May 17, 2020, Mr. Loewen was released by the Saints. The Notice of Termination sent to Mr. Loewen indicates, "[i]n the judgment of the Club, your skill or performance has been unsatisfactory as compared with that of other players competing for positions on the Club's roster." Khai Harley, the Saints' Vice-President of Football Administration, testified that at the time he signed the Notice of Termination, he was not aware of any injuries that prohibited Mr. Loewen from playing football.

On May 26, 2020, Mr. Loewen was examined by Dr. Ramon Ylanan, an orthopedic surgeon trained in sports medicine. Mr. Ylanan's records reflect that Mr. Loewen reported he had a lingering issue with his left knee but no major complaints with his knee, and he denied having mechanical symptoms or instability. The next day, May 27, 2020, Mr. Loewen appeared for an exit physical with the Saints via telehealth due to Covid-19 protocols. He indicated that he had clicking and discomfort in his knee, noting it was more evident after being cut by the team. Mr. Loewen declined to complete the physical because it was virtual.

In June of 2020, Mr. Loewen began collecting unemployment benefits and continued training, hoping to be signed by another NFL team. On August 11, 2020, Mr. Loewen saw Dr. Ylanan and reported that his knee was bothering him daily, causing pain and swelling that affected his daily activities. He also reported increased pain and discomfort in his left ankle. After examining Mr. Loewen and noting his prior injuries and surgeries, Dr. Ylanan opined that Mr. Loewen could no longer play football at the NFL level.

In August of 2020, Mr. Loewen returned to his home state of Hawaii. According to Mr. Loewen, he went back to Hawaii because he felt a "calling from

the Lord to get into farming." He began volunteering at a farm with a former teacher and then purchased 43 acres of property, with assistance from the United States Department of Agriculture ("USDA"), in order to begin his own farming operations. Mr. Loewen contends that he earns approximately $350.00 per week from his farming business.

According to Mr. Loewen, after he returned to Hawaii, he sought a coaching position at his high school but was informed there was only an unpaid position available. He also helped his brother at his welding business for about a month, but he contends he could not continue this work due to his left knee and ankle issues.

A functional capacity evaluation was performed on August 11, 2021 by an occupational therapist, Casey Garretson. Mr. Garretson found that Mr. Loewen was very functional overall and capable of performing heavy capacity work, though he noted that Mr. Loewen had "mild deficits with crouching and stair climbing" as a result of his left knee and ankle injuries. According to Mr. Garretson, Mr. Loewen has an 11% impairment rating of his lower left extremity and 4% whole body impairment.

On October 12, 2020, Mr. Loewen filed a Disputed Claim for Compensation against the Saints and its workers' compensation insurer, Berkley, seeking disability status, medical treatment, and penalties and attorney fees based on the left ankle injury he sustained on September 17, 2017 while playing in a game for the Saints. Also on October 12, 2020, Mr. Loewen filed a second Disputed Claim for Compensation against the Saints and Berkley seeking wage benefits, disability status, medical treatment, and penalties and attorney fees based on the left knee injury he sustained during practice with the Saints on December 6, 2019.

On January 7, 2021, the workers' compensation court signed an Order consolidating the Disputed Claims for Compensation arising from both his left

ankle injury and his left knee injury. In June 2021, Mr. Loewen filed an Amended Disputed Claim for Compensation to add the allegation that he re-injured his left ankle during the course and scope of his employment with the Saints on December 26, 2019.

This matter came before the workers' compensation court for trial on January 10, 2022. At trial, the parties stipulated that:

1) Mr. Loewen injured his left ankle in the course and scope of his employment with the Saints during a game at the New Orleans Superdome on September 17, 2017;

2) Mr. Loewen injured his left knee in the course and scope of his employment with the Saints at practice during the regular season on December 6, 2019;

3) Mr. Loewen reinjured his left ankle in the course and scope of his employment with the Saints at practice during the regular season on December 26, 2019;

4) Susan Whitley, the Saints' claims adjuster with Berkley, received and approved a choice of physician form on August 5, 2020, designating Mr. Loewen's choice as Dr. Ramon Ylanan;

5) Ms. Whitley received a health insurance claim form from Dr. Ylanan related to the August 11, 2020 evaluation and treatment of Mr. Loewen, and she approved and paid the claim on August 25, 2020.

Mr. Loewen testified at trial and several exhibits were admitted, including the depositions of Dr. Bankston and Mr. Loewen's agent, medical and training records, contracts, and more. At the end of trial, the workers' compensation court allowed defendants additional time to have an expert review the functional capacity evaluation and to depose Mr. Garretson. The court also allowed the parties time to file post-trial memoranda. On February 25, 2022, counsel for each party appeared in court, and defendants introduced Mr. Garretson's deposition which was admitted into evidence.

On July 28, 2022, the workers' compensation court rendered a judgment finding that while in the course and scope of his employment with the Saints, Mr.

Loewen injured his left ankle during a game on September 17, 2017, injured his left ankle[1] during practice on December 6, 2019, and reinjured his left ankle during practice on December 26, 2019.  The judgment ordered that Mr. Loewen is entitled to ongoing reasonable and necessary medical treatment for these injuries.  The judgment further provided that Mr. Loewen failed to meet his burden to show that he is disabled from work as a result of injuries sustained while working in the course and scope of his employment with the Saints, and dismissed his case with prejudice.  Mr. Loewen appeals.

**LAW AND DISCUSSION**

On appeal, Mr. Loewen sets forth six assignments of error.

In his first assignment of error, Mr. Loewen argues that the workers' compensation judge erred by finding that he injured his left ankle, and not his left knee, while in the course and scope of his employment with the Saints on December 6, 2019.  Mr. Loewen indicates that he believes this error is likely the result of an inadvertent typographical error or clerical error.  We agree.

The July 28, 2022 judgment provides that "[c]laimant injured his left ankle while in the course and scope of his employment with the New Orleans Saints at practice during the regular season on December 6, 2019."  However, the parties stipulated and the testimony and evidence show that Mr. Loewen injured his left knee on this date.  There is no evidence that Mr. Loewen injured his left ankle on December 6, 2019.

We agree with Mr. Loewen that the judgment incorrectly indicates he injured his left ankle on December 6, 2019.  Accordingly, finding merit in this assignment of error, we amend the workers' compensation court's judgment to reflect that Mr. Loewen injured his left knee, and not his left ankle, while in the course and scope of his employment with the Saints on December 6, 2019.

---

[1] See the discussion in assignment of error number one, *infra*.

In his second assignment of error, Mr. Loewen asserts that the workers' compensation court erred by denying his claim for supplemental earnings benefits ("SEBs"). He contends that the evidence shows he was restricted from playing football due to the injuries he sustained while working for the Saints. Mr. Loewen further asserts that he was unable to find work earning at least 90% of his pre-injury wage, so he decided that self-employment as a farmer would provide him with the best opportunity to accommodate his physical limitations while also providing a financially promising and stable income. Mr. Loewen contends that he met his initial burden of proving that he cannot earn 90% of his pre-injury wage, but the Saints did not meet their burden of proving that he is underemployed or that there are available jobs he is capable of performing for which he could earn at least 90% of his pre-injury income.

The Saints and Berkley respond that the workers' compensation court correctly denied Mr. Loewen's claim for SEBs, because the evidence shows he did not seek any gainful employment after being released by the Saints. Thus, he did not meet his initial burden of proving that his left knee injury and/or left ankle injury resulted in his inability to earn at least 90% of his pre-injury wage, and the burden did not shift to defendants to prove he could perform a particular job earning at least 90% of his pre-injury wages.

The purpose of supplemental earnings benefits is to compensate an injured employee for the wage-earning capacity he lost as the result of an accident. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. La. R.S. 23:1221(3)(a)(i) provides that an employee is entitled to receive SEBs if he suffers a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. *Id.*

Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury caused his inability to earn 90% or more of his average

pre-injury wage. La. R.S. 23:1221(3)(a)(i); *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/19/11), 56 So.3d 170, 174. It is only when the employee satisfies this initial burden that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to the employee in his or the employer's community or geographical region. *Id.* In determining whether an injured employee has made out a prima facie case of entitlement to SEBs, the workers' compensation court should take into account all of the factors that may bear on an employee's ability to earn a wage. *Poissenot*, 56 So.3d at 174, citing *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1009 (La. 1989).

The determination by the workers' compensation judge as to whether the claimant has discharged his burden of proof is a factual determination that will not be disturbed upon review in the absence of manifest error or unless clearly wrong. *Bruno v. Harbert International, Inc.*, 593 So.2d 357, 361 (La. 1992); *Banks*, 696 So.2d at 556. The manifest error/clearly wrong standard of appellate review applies in workers' compensation cases even when the court's decision is based upon written reports, records or depositions. *Bruno,* 593 So.2d at 361.

In the present case, the workers' compensation court found that Mr. Loewen did not meet his burden of proving that he cannot earn 90% of his pre-injury income. This finding is supported by the record and not manifestly erroneous.

At the time Mr. Loewen was released by the Saints in May of 2020, he had not been restricted from playing football. After he left the Saints, he continued to train and was interested in playing for another team.

Even if Mr. Loewen could no longer play football due to the left knee and left ankle injuries he sustained while working for the Saints, he did not show that he was unable to obtain employment earning at least 90% of his pre-injury wages.

Mr. Loewen testified that he worked for his brother's welding business as a laborer for approximately one month in January of 2021, earning $2,500.00, but was not able to continue due to his injuries. However, in November 2020, prior to the time he worked for his brother's welding business, he had begun the process of purchasing land for his farm. He also described the job at the welding company as "helping his brother," which could suggest that he was not seeking permanent or prolonged employment in this job. He also notes that he tried to obtain a coaching job from his high school, but a paid position was not available.

In order to receive SEBs, La. R.S. 23:1221(3)(a) requires that a claimant prove by a preponderance of the evidence that he is unable to earn 90% or more of the wages he was earning at the time of the injury, whether or not it is in the same or similar job in which the claimant was previously employed. *Poissenot*, 56 So.3d at 175. This statute focuses on the amount of wages earned before and after the accident, not the type of occupation or work performed. *Id.*

At trial, Mr. Loewen testified that he felt a calling from God to pursue farming. He also stated that he fell in love with farming, because it is hard work and he loves hard work. He obtained a loan from the USDA to purchase land for his farm, and he has to pay the loan back over 35 years. Mr. Loewen testified that other than asking his high school for a coaching job and working for his brother's welding business for a month, he did not apply for any non-football jobs in the heavy capacity or any other classification.

Mr. Loewen contends that it is the employer's duty to prove with competent evidence that he is underemployed and that he is capable of obtaining a job making 90% of his pre-injury wages. However, the employee must first make a showing by a preponderance of the evidence that he is unable to earn at least 90% of his prior wages before the burden shifts to the employer.

In *Moya v. Lucas*, 20-329 (La. App. 5 Cir. 3/24/21), 316 So.3d 572, which was cited by the workers' compensation judge, this Court found that the claimant was not entitled to SEBs where the evidence did not show that he sought employment in another field or that he could not obtain suitable employment earning at least 90% of his pre-injury wages. This Court found that because the claimant failed to meet his initial burden of proving that his accident caused an inability to earn 90% or more of his pre-injury wages, the burden never shifted to the employer to show that claimant could perform a certain job that was offered or reasonably available to him. *Id.* at 579.

See also *Wilson v. Metropolitan Development Center*, 12-487 (La. App. 5Cir. 3/13/13), 113 So.3d 261, and *Forbes v. Metropolitan Development Center*, 09-901 (La. App. 5 Cir. 3/9/10), 35 So.3d 377.

In the present case, even if Mr. Loewen's work injuries prevented him from continuing to play football, the evidence did not show that he could not work in another field of employment earning 90% of his prior wages. Mr. Loewen has a college degree in business administration, and his functional capacity evaluation indicates he can work at jobs in the heavy classification. However, Mr. Loewen has chosen self-employment as a farmer making substantially less than his pre-injury wages.

Because Mr. Loewen did not show that the injuries he sustained while working for the Saints caused an inability to earn 90% of his prior wages, the burden of proof did not shift to the Saints to show he could perform any jobs that were reasonably available to him earning 90% of his pre-injury wages. We find no manifest error in the trial court's determination that Mr. Loewen failed to meet his burden of proving entitlement to SEBs. Accordingly, we affirm the denial of this claim.

In his third assignment of error, Mr. Loewen contends that the workers' compensation judge erred by failing to address his alternative request for permanent partial disability ("PPD") benefits in her judgment. He contends that he proved at trial that he has 11% permanent impairment in his left leg and 4% overall body impairment. Therefore, he argues that he is entitled to an award of PPD benefits in the amount of $13,244, pursuant to La. R.S. 23:1221(4)(h).

The Saints and Berkley respond that the workers' compensation court addressed this claim and found that Mr. Loewen did not meet his burden of proving he was disabled. They further argue that pursuant to La. R.S. 23:1221(4)(Q), Mr. Loewen was required to establish his disability or impairment rating under the American Medical Association's guidelines for evaluating permanent impairment, and he failed to do so with expert medical testimony, as Mr. Garretson is not a medical doctor.

Although the judgment provides that Mr. Loewen "failed to meet his burden to show that he is disabled from work," the reasons for judgment suggest that the trial court considered whether Mr. Loewen was entitled to temporary total disability ("TTD") benefits, not PPD benefits. Mr. Loewen did not make a claim for TTD benefits. We acknowledge that appeals are taken from the judgment itself, not the written reasons for judgment. La. C.C.P. art. 1918; *Aderholt v. Metro Sec., Inc.*, 14-880 (La. App. 5 Cir. 3/25/15), 169 So.3d 635, 640. Reasons for judgment set forth the basis for the court's holding, though they are not binding. *Id.* Considering the language of the judgment and the reasons for judgment indicating the workers' compensation court considered TTD benefits, which was not an issue at trial, we agree that the court failed to address the issue of PPD benefits.

The claimant has the burden of proving the nature and extent of a disability. La. R.S. 23:1221; *Sensat v. Washington Group Inter., Inc.*, 12-654 (La. App. 3 Cir.

12/12/12), 106 So.3d 683, 692. The determination of disability is a factual finding made by the trial court and will not be disturbed absent a finding of manifest error. *Fabacher v. Stine, Inc.*, 13-471 (La. App. 3 Cir. 10/9/13), 124 So.3d 553, 561.

Accordingly, we remand this matter and order the workers' compensation court to rule on Mr. Loewen's claim for PPD benefits, which includes a determination of whether Mr. Loewen established his disability or impairment rating under the American Medical Association's guidelines for evaluating permanent impairment, pursuant to La. R.S. 23:1221(4)(Q).

In his fourth assignment of error, Mr. Loewen argues that the trial court erred by failing to determine the correct calculation of his average weekly wage ("AWW"), which was a contested issue. The Saints and Berkley respond that the workers' compensation court did not need to reach the issue of determining the AWW, because Mr. Loewen failed to meet his burden of proof under any AWW calculation.

In order to prove entitlement to SEBs, a claimant must show that he is unable to earn 90% of his pre-injury wage. Accordingly, one would typically need to know the claimant's AWW in order to determine if he was able to earn 90% of it. However, in the present case, Mr. Loewen contends that his AWW was $4,232.92 per week based on his 2019 annual earnings, whereas the Saints and Berkley contend that his AWW was $2,677.08 based on the NFL practice player contract under which he earned $139,208.00 for the 2019 season. Under either calculation of Mr. Loewen's AWW, he has failed to show that he cannot earn 90% due to his work-related injuries. Accordingly, even if the workers' compensation judge erred by failing to determine the AWW, Mr. Loewen failed to show he could not earn 90% of either AWW.

In his fifth assignment of error, Mr. Loewen argues that the workers' compensation court erred by failing to rule on his request for payment of a medical

bill for an MRI of his left knee that was performed on June 11, 2020. He contends that his personal insurance paid $169.50 towards the MRI, which left a balance of $510.90. He asserts that the MRI was pre-authorized and the bill should have been paid by defendants. The Saints and Berkley respond that Mr. Loewen did not offer any evidence at trial to show that there were any medical bills they failed to pay.

At the beginning of trial, the parties offered several exhibits that were admitted without objection. Claimant's exhibit CX-10 is a bill for the June 11, 2020 MRI, which Mr. Loewen now contends was unpaid. However, at trial, Mr. Loewen testified he was unaware of any medical treatment that was denied by the Saints. Further, Susan Whitley, the claims adjuster for the Saints and Berkley, provided that she paid all of the medical bills she received.

Mr. Loewen complains that the court did not address the issue of this medical bill. However, the judgment orders that Mr. Loewen is entitled to reasonable and necessary medical treatment for injuries sustained as a result of the work accidents. Although Mr. Loewen did not show that this bill remains unpaid, the Saints and Berkley are required to pay for reasonable and necessary medical treatment, as ordered in the judgment.

In his sixth assignment of error, Mr. Loewen contends that the workers' compensation court erred by denying his request for an award of penalties and attorney fees due to defendants' failure to pay indemnity benefits and outstanding medical benefits and failure to timely pay expenses associated with the functional capacity evaluation. He argues that the Saints and Berkley relied only on Dr. Bankston's report that he was cleared to play football and ignored Dr. Ylanan's report that he had a continuing disability due to his work-related injuries and that he could not play football. He claims that the Saints and Berkley were arbitrary and capricious in failing to investigate his claim and pay any benefits, other than medical expenses.

In his disputed claims for compensation, Mr. Loewen sought penalties and attorney fees pursuant to La. R.S. 23:1201(F). The purpose of imposition of penalties and attorney's fees is to discourage indifference and undesirable conduct by employers and insurers. *Redler v. Giorlando's Rest. Corp.*, 07-658 (La. App. 5 Cir. 2/6/08), 979 So. 2d 512, 516, *writ denied*, 08-0863 (La. 6/6/08), 983 So. 2d 925. Awards of penalties and attorney's fees in workers' compensation cases are essentially penal in nature. *Id.* The crucial inquiry in determining whether to impose penalties and attorney's fees on an employer is whether the employer had an articulable and objective reason to deny benefits at the time it took action. *Redler*, 979 So.2d at 516.

The determination of whether an employer or insurer should be cast with penalties and attorney's fees in a workers' compensation action is a factual question, which will not be disturbed on appeal in the absence of manifest error. *Barbarin v. TLC Home Health*, 02-1054 (La. App. 5 Cir. 4/29/03), 845 So. 2d 1199, 1206. Considering the entire record, along with our decision to uphold the workers' compensation court's denial of Mr. Loewen's claims for SEBs, we find no manifest error in the denial of his claim for penalties and attorney fees.

**DECREE**

For the reasons stated above, we amend the workers' compensation court's July 28, 2022 judgment to reflect that Mr. Loewen injured his left knee, not his left ankle, on December 6, 2019, while in the course and scope of his employment with the Saints. We also remand and order the workers' compensation court to rule on Mr. Loewen's claim for PPD benefits. In all other respects, we affirm.

**AFFIRMED IN PART, AMENDED IN PART;
REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JUNE 7, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-507
### C/W 22-CA-508

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
SHANNON C. LINDSEY (APPELLANT)     CHRISTOPHER J. KANE (APPELLEE)     JENNIFER C. BERGERON (APPELLEE)

**MAILED**
FRANK A. BRUNO (APPELLANT)
ATTORNEY AT LAW
807 HOWARD AVENUE
NEW ORLEANS, LA 70113